UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHAIM KAPLAN, *et al.*,

    *Plaintiffs*,

    v.

CENTRAL BANK OF THE
ISLAMIC REPUBLIC OF IRAN, *et al.*,

    *Defendants*.

Case No. 1:10-CV-00483 (RWR)

*Oral Argument Requested*

# BANK SADERAT IRAN AND BANK SADERAT PLC'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Frank C. Razzano
Ivan B. Knauer
Jeremy D. Frey
Matthew D. Foster
John C. Snodgrass

PEPPER HAMILTON LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, DC 20005-2004
(202) 220-1200

*Counsel for Defendants
Bank Saderat Iran and
Bank Saderat PLC*

January 14, 2011

# INTRODUCTION

Bank Saderat Iran ("BSI") and Bank Saderat PLC ("BSPLC") submit this reply in support of their motion to dismiss plaintiffs' complaint. As shown below, nothing in plaintiffs' opposition impeaches the arguments made in BSI and BSPLC's memorandum in support of the motion to dismiss. In that memorandum, BSI and BSPLC argue that the complaint should be dismissed on the ground that it presents non-justiciable questions involving sovereign acts of the states of Israel and Lebanon. The Court should dismiss the complaint for this reason and because plaintiffs lack standing to sue, have insufficiently pleaded their claims, and have failed to state claims for which relief may be granted. Moreover, as argued in BSI and BSPLC's memorandum (at 39-45), this Court lacks the requisite personal jurisdiction to proceed.

Plaintiffs' opposition is premised on two points: 1) plaintiffs were injured by acts of terrorism; and 2) *Wultz v. Islamic Republic of Iran*, 2010 U.S. Dist. LEXIS 11469 (D.D.C. Oct. 20, 2010), controls the outcome of this case. Plaintiffs' first argument would have this Court completely ignore the state of war that existed between Israel and Lebanon (of which government Hezbollah is a member) at the time of plaintiffs' alleged injuries. To decide this case, the Court must determine whether plaintiffs' injuries resulted from an act of war or an act of terrorism. This determination is not optional, as plaintiffs claim. It is central to the case because the very statutes that would provide subject matter jurisdiction for plaintiffs' claims contain an act of war exception.

Plaintiffs' second argument relies on the decision in *Wultz*.[1] But *Wultz* is distinguishable in at least two key aspects. First, *Wultz* involved a suicide bombing of a private restaurant by a Palestinian terrorist, *not* a wartime rocket attack that resulted in both military and civilian casualties in a conflict between two sovereign states. The acts in *Wultz* could not possibly have implicated either the act of state or political question doctrines or the act of war exception, as do the wartime attacks alleged here. Second, the bank in *Wultz*, unlike BSI and BSPLC, was alleged to have had *actual notice* that the transferred funds were going to a terrorist organization. This fact was repeatedly invoked and relied on by Judge Lamberth in his opinion. Here, there are no factual allegations that BSI or BSPLC had *any* notice or otherwise knew that the alleged funds transfer would benefit a terrorist entity. Unlike the plaintiffs in *Wultz*, plaintiffs here have alleged no specific facts regarding BSI and BSPLC's notice, knowledge, or state of mind as to the ultimate recipient of the alleged funds transfer or the attack alleged in the complaint.

As discussed below, neither *Wultz* nor any other case cited in the plaintiffs' opposition saves the complaint. The Court should therefore grant BSI and BSPLC's motion and dismiss the complaint.[2]

---

[1] Plaintiffs' counsel was also counsel for plaintiffs in *Wultz*. As plaintiffs' counsel well knows, plaintiffs' factual allegations regarding BSI and BSPLC's notice, knowledge, and intent stand in stark contrast to those in *Wultz*, where the defendant bank was alleged to have had actual notice of the fact that the funds were going to a terrorist organization.

[2] In Section 15 of their opening memorandum (at 32-34), BSI and BSPLC asserted that the American Plaintiffs are not proper plaintiffs under the FSIA (with respect to plaintiffs' first and second claims) since they do not claim injury or death from a particular act of extra-judicial killing, but instead claim injury and damage that allegedly occurred during the course of the Second Lebanon War. Plaintiffs did not oppose or address this contention in their opposition.

## I. PLAINTIFFS' CLAIMS ARE BARRED BY THE ACT OF STATE AND POLITICAL QUESTION DOCTRINES

Whether plaintiffs' recovery is barred by the act of state and political question doctrines is not a mere side show, as plaintiffs argue. It is the main event. If this case proceeds, the Court will have to decide sensitive political questions involving sovereign acts of the states of Israel and Lebanon. For example, to determine whether the alleged attack constitutes "international terrorism" as defined in the ATA, the Court will need to determine, *inter alia*, whether Hezbollah acted on behalf of the state of Lebanon, as the Israeli prime minister asserted, thus perpetrating an act of war by the government of Lebanon.[3] As discussed extensively in BSI and BSPLC's memorandum (at 3-14), these determinations are left to the political branches of government, not to Article III courts.

Plaintiffs' assertion that "war" and "terrorism" are not mutually exclusive concepts is contradicted by the plain language of the ATA, which makes this very distinction (at 18 U.S.C. § 2336(a)).[4] As discussed in BSI and BSPLC's memorandum (at 35), if this case proceeds, this Court will have to determine whether plaintiffs' injuries occurred during an international armed conflict (the 2006 war between Israel and Lebanon), and therefore fall within

---

[3] As if to prove the point that plaintiffs' claims involving Hezbollah engage the act of state and political question doctrines, on January 12, 2011, Hezbollah forced the collapse of Lebanon's government by withdrawing from the ruling coalition: "eleven ministers from Hezbollah…pulled out of [Lebanon's] 30-member coalition cabinet." Farnaz Fassihi & Jay Solomon, *Hezbollah Topples Lebanon Government*, WALL ST. J., Jan. 13, 2011, *available at* http://online.wsj.com/article/SB10001424052748704803604576077782735649792.html.

[4] Plaintiffs' reliance on *Almog v. Arab Bank*, 471 F. Supp. 2d 257 (E.D.N.Y. 2007), is misplaced. That case dealt with whether an alleged act of terrorism could constitute war crimes or genocide. Plaintiffs have not alleged war crimes or genocide in this case. Also, the suicide bombings in *Almog* occurred during the Second Intifada, not an international armed conflict between two sovereign states. Accordingly, the acts complained of in the cases cited by plaintiffs could not possibly have fallen within the ATA's "act of war exception," which BSI and BSPLC argue applies here. All of the other cases plaintiffs have cited in footnote 5 on page 7 of their opposition similarly relate to terrorist attacks that occurred outside the context of a declared war, an undeclared war between two nations, or an armed conflict between military forces of any origin—outside the scope of the three categories of the ATA's act of war exception. *See* 18 U.S.C. § 2331(4)(A)-(C).

the ATA's "war exception," or resulted instead from terrorist attacks actionable under the ATA. Because the central question of the case would require the Court to pass judgment on the motivations and actions of two sovereign states, the Court should decline to consider this case under the act of state and political question doctrines.

## II. PLAINTIFFS' INJURIES ARE NOT FAIRLY TRACEABLE TO BSI OR BSPLC

Unlike plaintiffs in *Wultz*, plaintiffs here have not made any specific factual allegations that BSI and BSPLC had any notice, knowledge, or reason to believe that their provision of routine banking services would result in a terrorist attack. In *Wultz*, Judge Lamberth repeatedly invoked the fact that the defendant bank had actual knowledge that the funds transfer would benefit a terrorist entity. In that case, plaintiffs alleged that Bank of China had previously been informed by Israeli officials that the transfers were enabling terrorist activities, and claimed that the bank was therefore on notice of the likely result of its actions. This fact was determinative of the Court's decision in *Wultz*, yet plaintiffs ignore this key distinction and have made no similar factual allegation here.

Plaintiffs' reliance on *Holder v. Humanitarian Law Project*, 561 U.S. __,130 S. Ct. 2705 (2010), only begs the question—unaddressed by any specific factual allegations in the complaint—whether BSI or BSPLC had *any* notice, knowledge, or reason to know that the alleged funds transfers would benefit a terrorist organization. In *Holder*, the Supreme Court merely ruled on the constitutionality of 18 U.S.C. § 2339B, which the Court found constitutional as applied to *knowing* support of a foreign terrorist organization. Here, there are no facts alleged that would support a determination that BSI or BSPLC knew that they were making a

-4-

"contribution to such an organization."[5] *Holder* therefore does not, as plaintiffs claim, "preclude the assertion by BSI and BSPLC that their transfer of funds to Hezbollah was not a cause of harm to the plaintiffs."

### III. THE ATCA DOES NOT PROVIDE SUBJECT MATTER JURISDICTION

Plaintiffs cite *Lizarbe v. Rondon*, 642 F. Supp. 2d 473 (D. Md. 2009), for the proposition that the ATCA does not require an alien plaintiff to reside or be present within the borders of the United States. Plaintiffs' reliance on *Lizarbe* is wrong for two reasons. First, the case is not binding precedent in this Court. Second, with all due respect to Judge Masetti, his citation of *Rasul v. Bush*, 542 U.S. 466 (2004), is misplaced: in *Rasul*, the Court found jurisdiction because the detainees were in United States custody at Guantánamo Bay, a military installation over which the United States has sole and exclusive jurisdiction. The detainees were not "nonresident aliens" because they were physically present in territory over which this country has sole and exclusive jurisdiction. *Rasul* is therefore simply not support for the conclusion reached by Judge Masetti.[6] Here, plaintiffs are not alleged to be residents of the United States or present in the United States or anywhere it has sole and exclusive jurisdiction.

---

[5] The after-the-fact press release by the Department of the Treasury attached as an exhibit to plaintiffs' complaint (and cited at ¶ 35) merely states in a conclusory fashion that BSI and BSPLC were involved in funds transfers "for the benefit of Hizballah fronts in Lebanon." Compl. Ex. A. at 3. Nowhere in the complaint have plaintiffs alleged specific facts that would support a conclusion that either BSI or BSPLC *knowingly* provided funds to a terrorist organization. The closest plaintiffs come to making such a claim is paragraph 27 of the complaint, in which plaintiffs conclusorily allege that BSI and BSPLC are creatures of the state of Iran and therefore "support and seek to advance" Iran's national policy and goals. Plaintiffs offer no facts to support this vague assertion. As BSI and BSPLC have shown in their memorandum, neither BSI nor BSPLC is an agency or instrumentality of Iran. Even agencies and instrumentalities of foreign states are entitled to a *presumption of separateness* from the foreign state—this presumption can only be overridden when an "entity is so extensively controlled by its owner that a relationship of principal and agent is created" or when recognizing the separate status of the entity "would work fraud or injustice." *First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 629 (1983).

[6] See discussion in BSI and BSPLC's opening memorandum at 17-19.

Plaintiffs' claims must also be dismissed because the ATCA's grant of jurisdiction is limited to state actors.  The ATCA does not impose liability on non-state actors like BSI and BSPLC.  As this Court has recognized, although the law is dynamic in some other jurisdictions with respect to whether the ATCA reaches non-state actors, the law in the District of Columbia is clear:  "plaintiffs cannot state a claim [under the ATCA] against…non-state defendants."  *Shafi v. Palestinian Authority*, 686 F. Supp. 2d 23, 29 (D.D.C. 2010) (Roberts, J.).[7]

Additionally, in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), the Supreme Court considered and limited the class of claims that may be brought by ATCA plaintiffs to those that "rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th century paradigms" which the Court has recognized.  *Id.* at 725.  While the Supreme Court has not yet had occasion to consider the U.S. nexus required under the ATCA, there is good reason to anticipate that the Court will ultimately require a U.S. nexus for plaintiffs asserting ATCA claims.  The historical antecedents underlying the ATCA's jurisprudence do not support the global forum shopping exemplified by the Israeli plaintiffs' suit here, where neither the causes of action nor the parties have any nexus to the

---

[7] In reaching this conclusion, this Court reviewed D.C. Circuit law and relied on *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774 (D.C. Cir. 1984); *Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10, 14 (D.D.C. 2005); and *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 206-07 (D.C. Cir. 1985).  *Sanchez-Espinoza* involved ATCA claims including summary execution, murder, abduction, and torture.  The Court dismissed these ATCA claims on the grounds that the statute's grant of jurisdiction "did not reach private, non-state conduct of this sort…."  770 F.2d at 206-07.  Under the law of the D.C. Circuit, neither claims of torture nor claims of extrajudicial killing are sufficient to confer subject matter jurisdiction over non-state actors under the ATCA.

The jurisprudence of 42 U.S.C. § 1983 regarding conduct occurring "under color of law" is inapposite to whether a defendant is a state actor and therefore may not be borrowed.  *Doe v. Exxon-Mobil Corporation*, 393 F. Supp. 2d 20 (D.D.C. 2005).  Because the complaint does not allege that BSPLC is a state actor, BSPLC must be dismissed from the fifth claim. BSI disputes plaintiffs' claims that it is a state actor, so if plaintiffs do not meet their burden of proof, BSI must also be dismissed from the fifth claim for lack of subject matter jurisdiction.

United States.[8]  Since the ATCA requires a U.S. nexus, the Israeli plaintiffs lack standing and their claims should be dismissed.

## IV. PLAINTIFFS HAVE FAILED TO PLEAD AIDING AND ABETTING UNDER THE ATCA

Plaintiffs ignore BSI and BSPLC's *Twombly* argument (Mem. at 19-20) that plaintiffs have failed to state a claim for direct liability under the ATCA.  Instead, plaintiffs argue that they have pleaded a viable claim for aiding and abetting under the ATCA.  Rather than identify any specific factual allegations in their complaint that satisfy the pleading standard in *Twombly*, *Erickson*, and *Iqbal*,[9] plaintiffs cite an after-the-fact Treasury Department statement attached as an exhibit.  This plainly does not suffice under the heightened standard for pleading outlined in those cases.  *Brooks v. Ross*, 578 F.2d 574, 581-82 (7th Cir. 2009).

As discussed previously, neither *Wultz* nor *Holder* saves plaintiffs' complaint: unlike the defendants in those cases, BSI and BSPLC had no notice, knowledge, or any reason to believe that the alleged funds transfer would benefit a terrorist organization or would ultimately have any connection to the acts alleged in plaintiffs' complaint.  Plaintiffs' allegations of causation are *not* similar to those in either case.  Unlike plaintiffs *Wultz* and *Holder*, plaintiffs

---

[8] As described in *Sosa*, the incident giving rise to the ATCA had a nexus to the United States.  In the Marbois Incident, Longchamps, a Frenchman, assaulted a French diplomat in Philadelphia.  *Republica v. De Longchamps*, 1 Dall. 111 (O.T. Philadelphia 1784) (criminal case arising under the Articles of Confederation).  In the cases brought after the ATCA was enacted, a U.S. nexus is also present.  In *Bolchos v. Darrel*, 3 F. Cas. 180 (No. 1,607) (S.C. 1795), a slave ship was seized on the high seas and brought to a U.S. port.  In *Moxon v. The Fanny*, 17 F.Cas. 942 (No. 9,895) (Pa. 1793), although the case was dismissed because it sounded in contract, the dispute involved the seizure of a British ship in U.S. waters.  In *Sosa*, the Court also described the 1795 opinion of a U.S. Attorney General involving a possible action under the ATCA against American citizens for the plunder of a slave colony in Sierra Leone.  *Sosa*, 542 U.S. at 720-21.  *Sosa* itself involved the alleged abduction to the United States of a foreign national at the request of U.S. authorities.  *Id.* at 732.

[9] Plaintiffs cite generally to paragraphs 23-53 of their complaint to support this claim (*see* Opp. at 10), but the cited paragraphs are bereft of any specific plausible factual allegations that would support plaintiffs' claim for aiding and abetting liability under the ATCA.  Paragraph 27, which plaintiffs highlight specifically, is entirely conclusory.  The court should not "accept legal conclusions cast in the form of factual allegations."  *Mountain States Legal Found. v. Bush*, 306 F.3d 1132, 1134 (D.C. Cir. 2002).

here have alleged no specific facts that would support a conclusion that BSI and BSPLC intended that the alleged funds transfer benefit a terrorist organization, as in *Holder*. Nor is there any allegation that BSI and BSPLC received notice that the alleged funds transfer would benefit any terrorist organization, as in *Wultz*. Plaintiffs' conclusory statements regarding BSI and BSPLC's intent, unsupported by any specific factual allegations, are insufficient to state a claim for which relief may be granted.

## V. THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION

Plaintiffs concede that the Court should decline to exercise supplemental jurisdiction over plaintiffs' non-federal claims if the Court concludes that it lacks original jurisdiction. *See* Opp. at 10. But plaintiffs err when they assert that BSI and BSPLC "do not deny that the court has jurisdiction under the FSIA." *Id.* On the contrary, BSI and BSPLC have argued throughout their memorandum in support of the motion to dismiss that BSI is not an instrumentality of Iran and therefore is not subject to plaintiffs' claims under the FSIA.

In their sixth and seventh claims, certain plaintiffs allege injuries and damages that occurred during the Second Lebanon War but have no connection to any extrajudicial killing under the FSIA or to any injury claimed under the ATA. Because the injuries of these Supplemental Plaintiffs (as defined in BSI and BSPLC's memorandum at 24-25) have no connection to any extrajudicial killing or to any injury claimed under the ATA, they do not arise out of the same case or controversy as the plaintiffs' federal question claims. The Court should accordingly decline to exercise supplemental jurisdiction over the Supplemental Plaintiffs' claims.

## VI. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER ISRAELI LAW

Plaintiffs rely erroneously on *Wultz* in asserting that they have properly stated a claim under Israeli law. Although it is true that Judge Lamberth conducted a thorough analysis

of Israeli law, plaintiffs' allegations here do not come close to the level of specificity of those pleaded in *Wultz*.  There, Judge Lamberth concluded that the bank owed a duty in fact and a notional duty "not to provide financial services to the PIJ when [the bank] *knew* that such provision would lead to terrorist violence and plaintiffs' injury." *Wultz*, 2010 U.S. Dist. LEXIS 111469, at *134 (emphasis added).  Here, plaintiffs have failed to plead any specific factual allegations that would support a finding that BSI or BSPLC knew that their provision of routine banking services would result in terrorist violence and injury.  As discussed in BSI and BSPLC's memorandum (at 26), Israeli law closely follows U.S. law on the key points of duty of care, breach, and causation.  *See Licci v. Am. Express Bank Ltd.*, 2010 U.S. Dist. LEXIS 32873 (S.D.N.Y. Mar. 31, 2010), at *19 (identifying these three elements).  Where there is no notice or knowledge (nor any even alleged by plaintiffs), there can be no duty, and consequently neither breach nor causation.

## VII.  PLAINTIFFS HAVE NOT COMPLIED WITH FED. R. CIV. P. 17

Plaintiffs' argument with respect to Fed. R. Civ. P. 17 confuses the two separate features of the rule: capacity and real party in interest.  These are set forth separately in Rule 17(a) and Rules 17(b) and (c):

> As used in Rule 17(a), the real-party-in-interest principle is a means to identify the person who possesses the right sought to be enforced….By way of contrast, capacity [under Rules 17(b) and (c)] is conceived to be a party's personal right to litigate in a federal court.

6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1542, at 469 (2010).

Rule 17(a), which deals with real party in interest, merely states that an undischarged executor, undischarged personal representative, or guardian can be a real party in interest.  BSI and BSPLC's argument that plaintiffs have failed to comply with Rule 17 has

-9-

nothing to do with who is the real party in interest. Instead, BSI and BSPLC have argued (at 13-14) that plaintiffs suing in representative capacities have not complied with the rules regarding *capacity to sue*—that is, the rules in Fed R. Civ. P. 17(b) regarding plaintiffs' personal right to litigate in a federal court.

Rule 17(b) addresses capacity to sue. It provides that the ability of a person to sue in a representative capacity "is determined by the law of the state in which the district court is held." Accordingly, any plaintiff suing in a representative capacity on behalf of a decedent, infant, or other incompetent person must comply with District of Columbia law. *Estate of Manook v. Research Triangle Inst. Int'l*, 693 F. Supp. 2d 4, 16 (D.D.C. 2010) (requiring that documents evidencing the representative's appointment be presented and filed as required by D.C. law). The Court should dismiss the claims brought by plaintiffs suing in representative capacities who have not complied with D.C. law as required by Fed. R. Civ. P. 17(b).

The case cited by plaintiffs, *Del Valle Rodriguez v. Wheeler*, 16 F.R.D. 103 (S.D. Tex. 1954), relates to real party in interest (Rule 17(a)), not capacity to sue under Rule 17(b). *Del Valle Rodriguez* says nothing about capacity to sue and consequently fails to refute BSI and BSPLC's argument that the plaintiffs suing in representative capacities lack capacity to sue without complying with D.C. law, as required by Fed. R. Civ. P. 17(b) and this Court's recent ruling in *Estate of Manook*.

## VIII. RELATIVES OF DECEDENTS MAY NOT ASSERT CLAIMS IN THEIR OWN RIGHT UNDER THE ATCA

Plaintiffs' fifth claim incorrectly asserts that both decedents and decedents' relatives can assert individual claims and recover damages under the ATCA. In opposition to BSI and BSPLC's argument (at 28-29) that decedents' relatives cannot recover damages under

-10-

the ATCA, plaintiffs cite *Xuncax v. Gramajo*, 886 F. Supp. 162 (D. Mass. 1995), and complain that BSI and BSPLC's cases relate to the TVPA, not the ATCA.

Plaintiffs' TVPA argument is a red herring. Courts have held that the cause of action for extrajudicial killing under the ATCA is to be determined by reference to the TVPA. In fact, the *Xuncax* case relied on by plaintiffs says the same thing. In *Xuncax*, the court was presented with ATCA claims made by relatives of two decedents. After analyzing the ATCA to determine the parameters of the claimed tort, the court determined that it should refer to the TVPA as the most analogous federal statute. *Xuncax*, 886 F. Supp. at 190. Other courts have made the same determination. *See, e.g., Estate of Cabello v. Fernando-Larios*, 157 F. Supp. 2d 1345 (S.D. Fla. 2001) (referring to TVPA to interpret the ATCA). Rather than supporting plaintiffs' position, the Court's holding in *Xuncax* directly supports BSI and BSPLC's argument that claims of extrajudicial killing under the ATCA should be determined by reference to the TVPA.[10]

The TVPA provides that liability for damages resulting from an extrajudicial killing runs solely "to the individual's legal representative, *or* to any person who may be a claimant in an action for wrongful death." 28 U.S.C. § 1350 (notes) (emphasis added). The use of the disjunctive "or" means that this statute does not contemplate recovery by both the decedent and the decedents' relatives for their own personal injuries, as claimed here by plaintiffs. "The plain language and the legislative history of the TVPA make clear that standing

---

[10] See discussion of cases in BSI and BSPLC's memorandum 28-29. Indeed, some cases have even held that that the TVPA *preempts* the ATCA in cases of extrajudicial killing and torture. *Enahoro v. Abuakar*, 408 F.3d 877 (7th Cir. 2005). *Cf. Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252 (11th Cir. 2009) (analyzing ATCA and TVPA separately); *Aldana v. Del Monte Fresh Produce*, 416 F.3d 1242 (11th Cir. 2005) (finding no preemption).

is limited to the victim himself or one bringing a claim on behalf of the victim." *Fisher v. Great Socialist People's Libyan Arab Jamahirya*, 541 F. Supp. 2d 46, 54 (D.D.C. 2008).[11]

In *Baloco v. Drummond Company*, 2009 U.S. Dist. LEXIS 129624 (N.D. Ala. Nov. 9, 2009), a case involving claims under the ATCA and TVPA, the court similarly analyzed the legislative history of both statutes and held that a "wrongful death claimant can have no standing under the TVPA if she also seeks damages on her own behalf." *Id.* at *25-29. Because it found that standing under the ATCA is determined by reference to the TVPA, the court held that plaintiffs "necessarily lacked standing" to bring claims in their own right under the ATCA as well. *Id.* Accordingly, plaintiffs here may not assert claims and seek recovery of damages under the ATCA other than on behalf of a decedent.

## IX. ISRAEL AND LEBANON ARE INDISPENSIBLE PARTIES

Because this case involves claims relating to military attacks that resulted in civilian casualties during a war between two sovereign states, Israel and Lebanon, it invariably and squarely implicates their interest in the outcome of this litigation. They are indispensible parties and must be joined under Fed. R. Civ. P. 12(b)(7) and 19(b), or this suit must be dismissed for failure to join them.

## X. PLAINTIFFS' FSIA CLAIMS AGAINST BSI MUST BE DISMISSED

Plaintiffs concede that their first and second claims against BSI must be dismissed if the Court finds that BSI is not an agency or instrumentality of Iran. As shown in BSI and BSPLC's memorandum (at 30-31), BSI is not an agency or instrumentality of Iran. Plaintiffs

---

[11] *Accord Hearst v. Socialist People's Libyan Arab Jamahirya*, 474 F. Supp. 2d 19, 30 (D.D.C. 2007)

have failed to meet their burden of showing that BSI is an agency or instrumentality of Iran.[12] Plaintiffs' FSIA claims against BSI should accordingly be dismissed.[13]

## XI. PLAINTIFFS' ATA CLAIMS ARE BARRED BY THE "ACT OF WAR" EXCEPTION[14]

Plaintiffs' claims are barred by the "act of war" exception, as discussed above and in BSI and BSPLC's memorandum (at 35-36). None of the cases cited by plaintiffs changes this. *Estate of Kleiman v. Palestinian Authority*, 424 F. Supp. 2d 153 (D.D.C. 2006), involved a bombing of a public transport bus, allegedly by Palestinian terrorists, not an attack during a war between two sovereign states that resulted in both military and civilian casualties, like the attack alleged here. *Estate of Kleiman* therefore does not stand for the proposition that any civilian casualties during a war are excluded from the "act of war" exception, as plaintiffs would have this Court believe.[15] Similarly, *Sokolow v. PLO*, 583 F. Supp. 2d 451 (S.D.N.Y. 2008), does not stand for the proposition argued by plaintiffs. That case involved a series of individual terrorist attacks, not a war between two sovereign states like the Second Lebanon War. It surely does not

---

[12] Plaintiffs have essentially conceded that they have failed to carry their burden of proof on this point. Although plaintiffs have the obligation of showing that BSI is an agency or instrumentality of Iran, they have failed to do so. In fact, the declaration submitted with plaintiffs' motion to vacate the default judgment and enter a scheduling order (ECF No. 17) admits that "it is *unclear at this point* whether [the entity known as] Edalat is actually part of the Iranian government." Decl. of Bijan Khalili ¶ 3 (ECF No. 17-8).

[13] Plaintiffs cite *Estate of Manook v. Research Triangle Institute, Int'l*, 693 F. Supp. 2d 4 (D.D.C. 2010), for the proposition that service by DHL satisfies the requirements of Fed. R. Civ. P. 4(f)(2)(A)-(C). BSI and BSPLC concede that the Court did not invalidate service in *Estate of Manook* because it was made via DHL. But a careful reading of that case reveals that the Court made no specific ruling on the issue and there is no indication that the specific point that BSI and BSPLC have made here was ever raised in that case.

[14] Because plaintiffs' brief contains two sections numbered Roman numeral "X," our numbering departs from that of plaintiffs' brief at this point but otherwise tracks the sequence of arguments in plaintiffs' opposition.

[15] *Biton v. Palestinian Interim Self-Government Authority*, 412 F. Supp. 2d 1 (D.D.C. 2005), involved a roadside bomb placed near an Israeli settlement that destroyed a school bus. Unlike the alleged attack here, which took place during a declared war between two sovereign nations, the attack in *Biton* took place during a war between Israel and the Palestinian Authority and therefore could not have implicated the ATCA's "act of war" exception outlined at 18 U.S.C. § 2331 because it did not involve a declared war between two nations or an "armed conflict between military forces of any origin."

support the claim that any civilian casualties that occur in a war fall outside the act of war exception. Finally, plaintiffs' citation of *Morris v. Khadr*, 415 F. Supp. 2d 1323 (D. Utah 2006), is inapposite: the attacks complained of there involved a roadside bombing by Al Qaeda in Afghanistan, not a rocket attack during a war between two sovereign states.

## XII. PLAINTIFFS HAVE INSUFFICIENTLY PLEADED BOTH PRIMARY AND SECONDARY LIABILITY UNDER THE ATA

As discussed in BSI and BSPLC's memorandum (at 36-39), plaintiffs have insufficiently pleaded their primary and secondary liability claims under the ATA. Plaintiffs have ignored BSI and BSPLC's *Twombly* argument and have relied erroneously on *Wultz* and *Boim III* in arguing that they have sufficiently pleaded both claims. Plaintiffs' complaint does not, as plaintiffs claim, "set forth in full detail facts supporting all the elements of an ATA claim, including causation, knowledge, and intent." In both *Wultz* and *Boim III* there were specific factual allegations, supported by evidence, that the defendants' provision of funds to the accused entities was *knowing*. Here, plaintiffs have failed to allege any specific facts that would support a conclusion that BSI or BSPLC had notice, knowledge, or any reason to believe that the alleged funds transfer would benefit terrorist groups or result in the injuries alleged. Plaintiffs would have this Court simply ignore this critical distinction.

## XIII. THE COURT LACKS SPECIFIC PERSONAL JURISDICTION OVER BSI AND BSPLC

To support their argument that the Court has specific personal jurisdiction over BSI and BSPLC, plaintiffs allege conclusorily that BSI and BSPLC's actions were aimed at harming the United States. There are no facts alleged in plaintiffs' complaint, either in the paragraphs cited in plaintiffs' opposition or elsewhere, that support this conclusory assertion. This is a lawsuit brought for injuries that occurred in Israel during the Second Lebanon War, an international armed conflict between the sovereign states of Israel and Lebanon. There is no

-14-

nexus to the United States. No facts are alleged to support plaintiffs' claim that BSI or BSPLC's actions—the provision of routine banking services in Europe and the Middle East—were aimed at harming the United States.

Because the plaintiffs have not set forth any jurisdictional facts, they are not entitled to any jurisdictional discovery. *Herero People's Reparations Corp. v. Deutsche Bank AG*, 2003 U.S. Dist. LEXIS 27086 (D.D.C. June 30, 2003) (holding that a plaintiff who made no effort to allege jurisdictional facts in the complaint cannot survive a motion to dismiss and is not entitled to jurisdictional discovery); *accord Kiobel v. Royal Dutch Petroleum Co.*, 2008 U.S. Dist. LEXIS 16592, at *42-43 (S.D.N.Y. Mar. 4, 2008). As discussed in BSI and BSPLC's opening memorandum (at 2), jurisdictional discovery is not necessary here because BSI and BSPLC's motion can readily be decided solely based on the act of state and political question doctrines.

## CONCLUSION

For the foregoing reasons, defendants BSI and BSPLC respectfully request that the Court dismiss the complaint with prejudice.

Respectfully submitted,

January 14, 2011

/Frank C. Razzano/
Frank C. Razzano
Ivan B. Knauer
Jeremy D. Frey
Matthew D. Foster
John C. Snodgrass
PEPPER HAMILTON LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, DC 20005-2004
(202) 220-1200

*Counsel for Defendants
Bank Saderat Iran and Bank Saderat PLC*

-15-

## CERTIFICATE OF SERVICE

      I certify that on January 14, 2011, I filed the foregoing document via ECF with the understanding that the ECF system would automatically serve counsel for the parties.

      /John C. Snodgrass/