UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

CHAIM KAPLAN, *et al.*,

                                  Plaintiffs,                    Case No.
                                               19-cv-3142 (ILG) (rlm)
             -against-

CENTRAL BANK OF THE ISLAMIC REPUBLIC OF
IRAN, *et al.*,

                                  Defendants.

----------------------------------------------------------------X

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
## FOR ENTRY OF FINAL JUDGMENT BY DEFAULT

### INTRODUCTION

This is a civil action under the Antiterrorism Act ("ATA"), 18 U.S.C. § 2331, *et seq.*, brought by American citizens who were severely injured by a series of rocket and missile attacks carried out by the Hezbollah terrorist organization against civilian population centers in Israel in July and August, 2006. The defendant in this action, Bank Saderat PLC ("BSPLC"), provided massive funding to Hezbollah during the years prior to the attacks.

BSPLC appeared by counsel and vigorously defended this case for nearly a decade. However, on June 28, 2019, BSPLC's counsel informed the Court that BSPLC had decided to cease participation in this case, and to dismiss its counsel. (DE 82). Therefore, on September 5, 2019, BSPLC's default was entered under Fed. R. Civ. P 55(a). (DE 86).

BSPLC followed the identical course – appearing, litigating for years, and then withdrawing and intentionally defaulting – in a parallel ATA case before this Court brought by Americans harmed by the 2006 Hezbollah rocket attacks. *See Lelchook v. Islamic Republic of*

1

*Iran*, 393 F. Supp. 3d 261 (E.D.N.Y. 2019) (entering default judgment on liability against BSPLC).

This case is therefore now ripe for entry of final default judgment against BSPLC, once plaintiffs' damages are fixed by this Court. In the event, before transferring this case to this Court the United States District Court for the District of Columbia carefully examined and determined the types and the measure of damages due to the plaintiffs herein as a result of the harm inflicted on them by the Hezbollah rocket attacks, in the course of entering final judgment in favor of the plaintiffs on claims against the Islamic Republic of Iran ("Iran"). (*See* DE 64). In entering final judgment against defendant BSPLC, this Court can and should adopt the damages findings and awards made by the D.C. District Court in plaintiffs' action against Iran.

Accordingly, plaintiffs hereby respectfully move this Court,[1] pursuant to Fed. R. Civ. P. 55(b)(2), to enter final judgment in their favor and against defendant BSPLC, in the amounts awarded in plaintiffs' action against Iran, to be trebled pursuant to ATA § 2333.[2]

## ARGUMENT

### A.  Relevant Background

This action was filed on March 23, 2010, in the United States District Court for the District of Columbia, by a group of American, Israeli and Canadian civilians who were injured in rocket and missile attacks on civilian population centers in Israel carried out by the Hezbollah terrorist organization between July 12 and August 14, 2006. (DE 3, *passim*). The complaint

---

[1] Plaintiffs respectfully note that (as will be discussed below) the weight of authority indicates that a final *default* judgment must be entered by an Article III judge in the circumstances presented here.

[2] As discussed below, one of the plaintiffs, Danielle Sauter, received an award against Iran but is not entitled to, and so does not seek, an award under the ATA in this case.

2

named as defendants: BSPLC; Bank Saderat Iran ("BSI"); Iran; the Central Bank of Iran ("CBI"); and unidentified officers and employees of the other defendants (who were named as Doe defendants). (*Id*. at ¶¶ 12-20). The American plaintiffs asserted ATA claims against BSPLC, and claims under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, against Iran, CBI and BSI. The non-U.S. plaintiffs asserted claims against BSI and BSPLC under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350. Additionally, all the plaintiffs asserted supplemental causes of action under Israeli law against BSPLC and BSI. (*Id*. at ¶¶ 117-173).

BSPLC and BSI appeared by counsel, and moved to dismiss the complaint on multiple grounds. (DE 15). On August 20, 2013, the D.C. District Court issued a decision disposing of that motion. *Kaplan v. Cent. Bank of Islamic Republic of Iran*, 961 F. Supp. 2d 185 (D.D.C. 2013). The court rejected arguments by BSPLC and BSI that this case presents a non-justiciable political question, that the plaintiffs lack Article III standing, that plaintiffs' claims are barred under the Act of State Doctrine, and that Israel and Lebanon are "indispensable parties." *Id*. at 191-199.

However, the court dismissed the American plaintiffs' ATA action against BSPLC on the basis of the ATA's "act of war" exception, 18 U.S.C. § 2336(a), and dismissed their FSIA action against BSPLC because BSPLC was no longer an "agency or instrumentality" of a foreign state. *Id*. at 198-204. The court also dismissed the non-U.S plaintiffs' ATS action against BSPLC and BSI. *Id*. at 204-205. Finally, having dismissed all the federal claims, the court declined to exercise supplemental jurisdiction over the plaintiffs' causes of action under Israeli law. *Id*. at 205-206.[3]

---

[3] The D.C. District Court also dismissed all the individual "Doe" defendants who were officers or employees of BSPLC or BSI. *Kaplan*, 961 F. Supp. 2d at 206.

3

The plaintiffs appealed the dismissal of their ATA and ATS claims. The D.C. Circuit vacated the dismissal of the American plaintiffs' ATA claims against BSPLC, finding that the district court had impermissibly assumed "hypothetical jurisdiction" by ruling on BSPLC's "act of war" defense (a merits issue) without first addressing BSPLC's personal jurisdiction defense. *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 509-514 (D.C. Cir. 2018). The D.C. Circuit affirmed the dismissal of the non-U.S. plaintiffs' ATS claims. *Id*. at 514-516.

After the D.C. Circuit remanded the ATA claims against BSPLC back to the D.C. District Court, the district court severed the ATA claims and transferred them to this Court. (DE 77-78).[4]

It is well-established that "severed claims become entirely independent actions to be tried, and judgment entered thereon, independently." *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999) (quoting 9 Wright & Miller, Federal Practice and Procedure: Civil 2d § 2387). Therefore, following severance and transfer to this Court, the sole claims in this action are the ATA claims and the sole defendant in this action is BSPLC.

As noted above, on June 28, 2019, shortly after transfer to this Court, BSPLC's counsel informed the Court that BSPLC had decided to cease participation in this action and dismiss its counsel, and on September 5, 2019, BSPLC's default was entered. (DE 82, 86).

**B.  Jurisdiction and Liability**

BSPLC's willful default establishes its liability in this case, because "a party's default is deemed as an admission of all well-pleaded allegations of liability." *Trustees of the Local 813*

---

[4] Notably, in its decision severing and transferring the ATA claims to this Court, the D.C. District Court also ruled that the "act of war" defense is no longer available to BSPLC in this case, due to a statutory amendment enacted in October 2018. (*See* DE 78 at 3).

*Ins. Tr. Fund v. A.A. Danzo Sanitation*, 2018 WL 4268907, at *3 (E.D.N.Y. Aug. 8, 2018), *report and recommendation adopted*, 2018 WL 4266038 (E.D.N.Y. Sept. 5, 2018).

The allegations against BSPLC in plaintiffs' complaint are detailed, extensive and extremely well-pleaded, and are based *inter alia* on findings made by the U.S. Treasury. (DE 3 at ¶¶ 16; 23-116; 127-145). Indeed, the allegations made in plaintiffs' complaint here essentially mirror those made in the *Lelchook* action, which this Court has already found sufficient to establish BSPLC's liability for both primary and secondary liability under the ATA. *See Lelchook*, 393 F. Supp. 3d 261 at 265-268. As BSPLC itself has helpfully confirmed, "*Lelchook* involved different plaintiffs than *Kaplan*, but essentially the same claims." (DE 82 at 3). Thus, here too, BSPLC's primary and secondary liability under the ATA has been established.[5]

The Court must also ensure that it has subject matter and personal jurisdiction before entering default judgment. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) ("Before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant.") (brackets and citation omitted); *Hamburg-Sud N. Am., Inc. v. Bomix Industria de Embalagens Ltda.*, 2017 WL 9482108, at *4 (E.D.N.Y. Nov. 3, 2017), *report and recommendation adopted*, 2017 WL 6606896 (E.D.N.Y. Dec. 26, 2017)

---

[5] As this Court noted in *Lelchook*, secondary liability is available in ATA actions that were "pending" as of September 28, 2016, when Congress enacted the Justice Against Sponsors of Terrorism Act ("JASTA"). *Id.* at 265; n.2. This case was "pending" as of that date. "The definition of the term 'pending' includes those cases in which the appeal is still pending. By analogy, cases in which the right to appeal has not yet been exhausted or expired also should be considered pending." *Mendoza v. Blum*, 560 F. Supp. 284, 286 (S.D.N.Y. 1983) (citation omitted). *See also e.g. Gargoyles v. U.S.*, 45 Fed. Cl. 139, 143 (1999) (same) (collecting cases); *Bryant v. Ford Motor*, 886 F.2d 1526, 1531 (9th Cir. 1989) (a case is "pending" if the mandate has not issued); *Swartz v. Meyers*, 204 F.3d 417, 421 (3d Cir. 2000) ("'pending' includes the time for seeking discretionary review, whether or not discretionary review is sought.").

("[B]efore a court grants a motion for default judgment, it may *sua sponte* assure itself that it has subject matter jurisdiction over the proceeding.").

There is no question that this Court has both subject-matter jurisdiction over this action and personal jurisdiction over BSPLC. Because plaintiffs' claims against BSPLC are brought under a federal cause of action, *i.e.*, the ATA, 18 U.S.C. § 2333, this Court has original subject-matter jurisdiction under 28 U.S.C. § 1331.[6] As for personal jurisdiction, it is black-letter law that "a defendant forfeits its jurisdictional defense if it appears before a district court to press that defense but then willfully withdraws from the litigation and defaults, even after being warned of the consequences of doing so." *City of New York*, 645 F.3d at 135. BSPLC is well-acquainted with this rule, because it was found to have forfeited its personal jurisdiction defense in *Lelchook* for just this reason. *See* Electronic Order, dated Sept. 28, 2018, in *Lelchook v. Islamic Republic of Iran*, Civ. No. 16-7078-ILG-RLM ("After initially appearing and pressing a personal jurisdiction defense, defendant Bank Saderat PLLC then willfully withdrew from the litigation, resulting in an entry of default. Defendant Bank Saderat therefore has waived its personal jurisdiction defense, *see City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 135 (2d Cir. 2011).").

If that were not enough, BSPLC's counsel explicitly warned BSPLC in writing that its decision to dismiss its counsel and cease participation in this case would result in forfeiture of its personal jurisdiction defense and default judgment. (*See* DE 82 at 3-4; Affidavit of counsel). Thus, BSPLC has knowingly forfeited any personal jurisdiction defense in this action.

## C. Damages

---

[6] Moreover, as discussed above, all of BSPLC's challenges to subject-matter jurisdiction were rejected by the D.C. District Court.

Because this Court has subject-matter jurisdiction over this action and personal jurisdiction over BSPLC, and BSPLC's liability has been established by its intentional default, all that remains in order to enter final judgment by default against BSPLC in favor of plaintiffs is to fix the amount of plaintiffs' damages, pursuant to Fed. R. Civ. P. 55(b)(2).

On July 23, 2014, the D.C. District Court entered a decision finding Iran liable under FSIA § 1605A for plaintiffs' injuries resulting from the Hezbollah rocket attacks. (DE 53-54).[7] On October 1, 2014, the D.C. District Court appointed a Special Master "to take evidence and file a report and recommendation regarding the measure of" plaintiffs' damages. (DE 55 at 1).

The plaintiffs submitted detailed and extensive damages evidence to the Special Master. (*See* attached Declaration of Robert J. Tolchin). After carefully considering and analyzing this evidence, the Special Master submitted reports containing his findings and recommendations to the D.C. District Court. (*See Kaplan*, Civil No. 09-646, at DE 66-80).[8] Plaintiffs then moved the Special Master to reconsider certain of his findings and recommendations. (*Id*. at DE 81-82).[9]

On September 30, 2016, the D.C. District Court issued a Memorandum Opinion regarding plaintiffs' damages (DE 64 at 5-28). After carefully considering and reviewing the

---

[7] That decision also found the Democratic People's Republic of Korea ("North Korea"), against which the plaintiffs had earlier filed a separate FSIA action, *Kaplan v. Hezbollah, et al.*, Civil No. 09-646 (RCL), liable for plaintiffs' injuries under FSIA § 1605A. The July 23, 2014 decision also dismissed plaintiffs' claims against defendant CBI.

[8] The Special Master also examined and confirmed the plaintiffs' U.S. citizenship, documentary proof of which had also previously been docketed. (*See Kaplan*, Civil No. 09-646, at DE 66-80 (reports) and at DE 47, Ex. FF (Declaration of Robert J. Tolchin conveying copies of plaintiffs' U.S. passports)).

[9] Though the Special Master's reports, and the plaintiffs' motions for reconsideration, relate to and bear the captions of both the action against Iran and the action against North Korea, they were electronically docketed only in the North Korea action.

Special Master's reports, and the plaintiffs' motions for reconsideration (which it denied), the

D.C. District Court found that the following plaintiffs ("Recovering Plaintiffs") were entitled to

compensatory damages of the types, and in the amounts, set forth below:

| Plaintiff | Pain & Suffering | Solatium | Economic Damages | Total |
|---|---|---|---|---|
| Chaim Kaplan | $2,000,000 | $1,000,000 | $0 | $3,000,000 |
| Rivka Kaplan | $1,500,000 | $1,000,000 | $0 | $2,500,000 |
| Brian Erdstein | $1,500,000 | $1,000,000 | $0 | $2,500,000 |
| Karene Erdstein | $2,500,000 | $1,000,000 | $0 | $3,500,000 |
| Mayan Erdstein | $1,500,000 | $0 | $0 | $1,500,000 |
| Chayim Kumer | $2,000,000 | $0 | $0 | $2,000,000 |
| Nechama Kumer | $1,500,000 | $1,000,000 | $0 | $2,500,000 |
| Laurie Rappeport | $1,500,000 | $850,000 | $0 | $2,350,000 |
| Margalit Rappeport | $1,500,000 | $0 | $0 | $1,500,000 |
| Theodore Greenberg | $1,500,000 | $1,000,000 | $0 | $2,500,000 |
| Moreen Greenberg | $1,500,000 | $1,000,000 | $0 | $2,500,000 |
| Jared Sauter | $1,500,000 | $0 | $0 | $1,500,000 |
| Dvora Kaszemacher | $1,500,000 | $850,000 | $11,966.67 | $2,361,966.67 |
| Chaya Alkareif | $1,500,000 | $750,000 | $0 | $2,250,000 |
| Avishai Reuvane | $1,500,000 | $0 | $0 | $1,500,000 |
| Elisheva Aron | $1,500,000 | $0 | $0 | $1,500,000 |
| Yair Mor | $850,000 | $0 | $0 | $850,000 |
| Mikimi Steinberg | $850,000 | $0 | $0 | $850,000 |

(DE 64, *passim*). The D.C. District Court entered a final judgment, and an amended final

judgment, in favor of the Recovering Plaintiffs, reflecting these amounts. (DE 65, 76).

The D.C. District Court also found that plaintiff Danielle Sauter was not entitled to

recover for her own pain and suffering because she is not a U.S. citizen, but was entitled to

recover solatium damages under the FSIA, as the spouse of an injured U.S. citizen (*i.e.*, her

husband, Jared Souter). (DE 64 at 4-5; 12-13). In this respect, however, the ATA differs from the

FSIA. The FSIA permits recovery if either "the claimant or the victim was" a U.S. national.

28 U.S.C. § 1605A(a)(2)(A)(ii). But the ATA is narrower, and allows recovery only by a U.S.

citizen "or his or her estate, survivors, or heirs." 18 U.S.C. § 2333. Thus, where, as here, the

American victim survived the attack, his non-American spouse cannot recover under the ATA. "[U]nder the ATA, someone who "survived the attack ... has no 'survivors' or 'heirs' that can recover for his injuries on his behalf." *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 41 (E.D.N.Y. 2019) (quoting *Morris v. Khadr*, 415 F.Supp.2d 1323, 1337 (D. Utah 2006)). *See also Saperstein v. Palestinian Auth*., 2006 WL 3804718, at *1 (S.D. Fla. Dec. 22, 2006) ("Because Mr. Saperstein was not mortally wounded, 'his estate, survivors, or heirs' are not able to bring such action."). Accordingly, and unfortunately, plaintiff Danielle Sauter cannot and so does not seek an award in this ATA case.

The D.C. District Court also found that all the other plaintiffs asserting ATA claims were not entitled to any award of damages, either because they lacked U.S. citizenship, or because they had failed to prove any damages. (DE 64, *passim*). Therefore, those plaintiffs cannot, and thus do not, seek awards in this case.

For the reasons below, the Recovering Plaintiffs respectfully request that this Court adopt the damages findings and awards made in their favor the FSIA action:

***First***, it is well established that the self-same *types* of damages awarded to the Recovering Plaintiffs on their FSIA claims against Iran and North Korea – *i.e.*, pain, suffering, solatium, and economic losses – are all available under ATA, 18 U.S.C. § 2333. *See e.g. Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 41 (E.D.N.Y. 2019) ("Courts permit '[p]laintiffs to pursue claims for solatium [emotional] damages' under the ATA.") (quoting *Lelchook v. Commerzbank AG*, 2011 WL 4087448, at *2 (S.D.N.Y. 2011)); *Knox v. PLO*, 442 F. Supp. 2d 62, 80 (S.D.N.Y. 2006) (awarding solatium damages under the ATA); *Morris*, 415 F. Supp. 2d at 1337 (holding both that a U.S. citizen wounded in a terrorist attack "should be awarded damages for his lost income and pain and suffering" pursuant to the ATA, and that "the ATA permits

claims by U.S. citizens for their nonphysical injuries that result from a terrorist attack on their family member if the attack victim is a U.S. citizen who survives the attack."); *Goldberg v. UBS*, 660 F. Supp. 2d 410, 426 (E.D.N.Y. 2009) (citing cases and concluding that "every court that has construed § 2333(a)" has found that it permits both emotional and pecuniary damages); *Linde v. Arab Bank*, 384 F. Supp. 2d 571, 588-589 (E.D.N.Y. 2005) (same); *Sisso v. Islamic Republic of Iran*, 2007 WL 2007582, at *10 (D.D.C. 2007) ("injuries consisting of mental anguish and emotional pain and suffering… are cognizable under the ATA.").

Indeed, because the types of remedies available in ATA § 2333 actions and in FSIA § 1605A(c) actions are identical, courts hearing terrorism cases commonly consider and apply damages findings from ATA cases in FSIA cases, and vice versa. *See e.g. Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 2010 WL 11507790 (M.D. Fla. June 14, 2010) (using awards in prior FSIA and ATA cases interchangeably as guidance for determining award in ATA case); *Ungar v. Palestinian Authority*, 304 F. Supp. 2d 232, 267-77 (D.R.I. 2004) (same).

***Second***, plaintiffs have submitted to this Court (appended to the attached Declaration of Robert J. Tolchin) copies of the damages evidence that they submitted in their FSIA action.[10] This Court can therefore independently examine and assess that evidence, and ensure that it concurs with the findings and damages awards made in the FSIA action.

***Third***, it would be a clear waste of judicial and party resources, and an unnecessary and painful burden on the plaintiffs, to require them to make a new damages presentation in this Court. *Cf. Rubin v. Hamas*, 2004 WL 2216489, at *3 (D.D.C. Sept. 27, 2004) ("The plaintiffs

---

[10] Some of plaintiffs' damages evidence was also docketed in the North Korea action. (*See Kaplan*, Civil No. 09-646, at DE 81-82).

indicate that any evidence that they would present in the instant [ATA] case would be identical to the evidence presented in [their FSIA case against Iran] and that a second hearing 'would be a massive waste of judicial resources, and would needlessly force the plaintiffs to relive and reiterate the emotionally excruciating testimony previously given by them.' The court agrees. Accordingly, the court uses its previous findings of fact from [the FSIA case] to calculate appropriate damages.").

Accordingly, the Recovering Plaintiffs respectfully request that this Court adopt the damages findings and awards made by the D.C. District Court in their action against Iran.

Additionally, the ATA provides for treble damages. *See* 18 U.S.C. § 2333(a) ("Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism … may sue therefor … and shall recover threefold the damages he or she sustains."). Therefore, the compensatory damage awards made by the D.C. District Court should be trebled in this case. *Cf. Rubin*, 2004 WL 2216489, at n.2 (trebling awards previously made in FSIA action, when entering judgment in ATA action).

### D.  Technical Issues Relating to Entry of Final Judgment

There are three technical or procedural issues relating to the entry of final judgment in this case which the plaintiffs respectfully seek to bring to the Court's attention:

***First***, plaintiffs respectfully suggest (while in no way presuming to second-guess the Court's intentions, inclinations, or discretion) that referral of this motion to a magistrate judge might not be the most efficacious course of action in the present case. Most federal courts to address the issue have held that a magistrate judge lacks authority to enter a final default judgment absent prior consent of the defendant to the referral. *See e.g. Amergi v. Palestinian Authority*, 611 F.3d 1350, 1355 (11th Cir. 2010) ("because the district court never adopted or

11

approved of the magistrate judge's final judgment for Saperstein, and the parties never consented to the final judgment, we determined that the judgment was not binding."); *In re Pringle,* 495 B.R. 447, 457-462 (9th Cir. BAP 2013) (collecting cases and noting that the defendant's prior consent, *vel non*, to the referral, is likely dispositive); *but see Baker v. Socialist People's Libyan Arab Jamahirya*, 810 F. Supp. 2d 90, 99 (D.D.C. 2011) (magistrate judge ruled that he had authority to enter default judgment despite the lack of consent by the defendant to the referral).

To the best of plaintiffs' knowledge, the Second Circuit has not decided this issue. Thus, to avoid all doubt, ensure finality, and prevent subsequent direct attack on the judgment (in this Court) or collateral attacks on the judgment (*e.g.*, in other jurisdictions during enforcement proceedings), plaintiffs respectfully request that final judgment be entered by an Article III judge.

**Second**, plaintiffs may need to seek to enforce their judgment in other jurisdictions. Plaintiffs are informed that certain foreign jurisdictions will not recognize awards of treble damages and, moreover, will not recognize an award that *includes* treble damages unless the compensatory, pre-trebling element of the award is specifically identified as such.

Accordingly, plaintiffs respectfully request that the final judgment against BSPLC set forth both the underlying compensatory awards, prior to trebling, as well as the total, trebled awards. *See, e.g., Sokolow v. PLO*, 2015 WL 10852003 (S.D.N.Y. Oct. 1, 2015) (exemplar of final ATA judgment listing both the underlying compensatory awards and the post-trebling total awards).

**Third**, as discussed above, plaintiff Danielle Sauter is not entitled to recover under the ATA, and the D.C. District Court found that certain plaintiffs either did not demonstrate that they

suffered compensable harm as a result of the rocket attacks,[11] or are not U.S. citizens.[12] Accordingly, in order to avoid any questions of finality, plaintiffs respectfully request that the Court enter a final judgment which expressly dismisses the claims of these plaintiffs.

**WHEREFORE**, this motion should be granted.

Dated:   Brooklyn, New York
          January 16, 2020

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for the Plaintiff*

by:  Robert J. Tolchin

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627

---

[11] These are plaintiffs Arye Kaplan, Menachem Kaplan, Chana Kaplan, Mushka Kaplan, Efraim Kaplan, Noa Erdstein, Netiya Erdstein, Ariel Erdstein, Malka Kumer and Chana Kumer. (*See* DE 65). These plaintiffs were minors when the case was filed, and were named in the complaint by their initials.

[12] The non-U.S. citizens are plaintiffs Michael Fuchs and Myra Mandel.

13