UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CHAIM KAPLAN, *et al.*,

      Plaintiffs,

 - against -

CENTRAL BANK OF THE ISLAMIC
REPUBLIC OF IRAN, *et al.*,

      Defendants.
------------------------------------------------------------x

MEMORANDUM AND ORDER
19-CV-3142 (ILG) (RLM)

**GLASSER**, Senior United States District Judge:

 Plaintiffs Chaim Kaplan, Rivka Kaplan, Brian Ardstein, Keren Ardstein, Mayan Ardstein, Chayim Kumer, Nechama Kumer, Laurie Rappeport, Margalit Rappeport, Theodore Greenberg, Moreen Greenberg, Jared Sauter, Dvora Kaszemacher, Chaya Alkareif, Avishai Reuvane, Elisheva Aron, Yair Mor, and Mikimi Steinberg (collectively, "Plaintiffs") commenced this action against the Central Bank of the Republic of Iran, Bank Saderat Iran ("BSI"), Bank Saderat PLC ("BSPLC"), the Islamic Republic of Iran, and a group of John Does (collectively, "Defendants") for injuries resulting from a series of rocket and missile attacks in Israel carried out by the Hezbollah terrorist organization. Pending before the Court is Plaintiffs' motion for final judgment by default and awarding of damages against BSPLC, and to dismiss certain of their claims. [ECF No. 88]. Because the Court finds that it cannot exercise personal jurisdiction over BSPLC, the motion is **DENIED** and the case is **DISMISSED**.

## BACKGROUND

 In July and August of 2006, the terrorist group Hezbollah fired a series of rockets and missiles at civilians in northern Israel. Plaintiffs are American citizens who say they were injured by these attacks; they commenced this action in the United States District Court for the District of

1

Columbia together with additional Canadian and Israeli citizens who were injured or who are the representatives of four Israeli citizens who were killed in the attacks. Compl. [ECF No. 3] ¶¶ 4-11. Plaintiffs alleged that the Defendants provided Hezbollah "with over $50 million in financial support . . . with the specific intent and purpose of facilitating, enabling and causing Hezbollah to carry out terrorist attacks against American and Israeli targets in order to advance Iran's Policy and Goals." *Id.* at ¶ 35. According to the Complaint, Iranian money was transferred from the Central Bank of Iran to BSI, which in turn transferred the money to BSPLC in London; BSPLC then transferred the money to Hezbollah's bank accounts at BSI's branches in Beirut, where Hezbollah withdrew the money. *Id.* at ¶ 36. Plaintiffs asserted causes of action under the Foreign Sovereign Immunities Act ("FSIA"), the Anti-Terrorism Act ("ATA"), and the Alien Tort Claims Act (also known as the Alien Tort Statute or "ATS"), as well as tort claims arising under the laws of the State of Israel.

BSI and BSPLC moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1), (2), (5), (6), and (7). [ECF No. 15]. Judge Lamberth of the United States District Court for the District of Columbia granted the motion, holding (i) that BSI was not an instrument of a foreign state and thus could not be subject to liability under the FSIA, (ii) that BSPLC was not subject to liability under the ATA because the rocket attacks met the ATA's definition of an "act of war," and (iii) that the court lacked subject matter jurisdiction to hear the non-American plaintiffs' ATS claims. *Kaplan v. Cent. Bank of Islamic Republic of Iran*, 961 F. Supp. 2d 185, 198-205 (D.D.C. 2013). On appeal, the United States Court of Appeals for the District of Columbia Circuit vacated the district court's dismissal with respect to the ATA claims, holding that the district court erred by failing to first find that it had personal jurisdiction over the defendants before considering the ATA's act-of-war exception. *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501,

509-14 (D.C. Cir. 2018). On remand, Judge Lamberth held that he could not exert personal jurisdiction over BSPLC owing to its lack of contacts with the District of Columbia. *Kaplan v. Cent. Bank of Islamic Republic of Iran*, No. 10-CV-483 (RCL), 2019 WL 2103424, at *2 (D.D.C. May 14, 2019). Instead of dismissing the case, he found it was in the interests of justice to sever the ATA claims against BSPLC and transfer them to this Court because, based on *Lelchook v. Islamic Republic of Iran*, 224 F. Supp. 3d 108 (D. Mass. 2016), he concluded that a New York federal court could plausibly exercise jurisdiction over the claims. *Kaplan*, 2019 WL 2103424, at *3.

Following the transfer, BSPLC decided to cease its participation in the case and discharged its counsel. [ECF No. 82]. The Court directed BSPLC to retain new counsel and warned it that failure to do so would likely result in the entry of a default judgment against it. Electronic Order dated July 1, 2019. Following BSPLC's failure to appear with new counsel, the Clerk of the Court entered a certificate of default against it pursuant to Fed. R. Civ. P. 55(a). [ECF No. 86]. Plaintiffs now seek an entry of final judgment on their ATA claims and an award of damages against BSPLC.

## ANALYSIS

### I.  Standard of Review

Fed. R. Civ. P. 55 governs a motion for entry of a default judgment and creates a two-step process for the court and parties to follow. First, Fed. R. Civ. P. 55(a) provides that when a defendant "has failed to plead or otherwise defend" a case, the Clerk of the Court "must enter the party's default." The entry of a default "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint

3

pertaining to liability. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (Fed. R. Civ. P. 55 "tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party").

Second, after a default has been entered, a party can move for the entry of a default judgment pursuant to Fed. R. Civ. P. 55(b). Such a judgment "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Mickalis Pawn Shop*, 645 F.3d at 128. Before entering a default judgment a court must ensure that the plaintiff's allegations establish liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Lelchook v. Islamic Republic of Iran*, 393 F. Supp. 3d 261, 264 (E.D.N.Y. 2019) ("In deciding whether a default judgment should be entered following entry of a certificate of default, a court may accept as true all well-pleaded allegations in the unanswered complaint but must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed."). Moreover, "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* But this does not require that the court hold a hearing. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) ("[U]nder Rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment.'") (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

## II.   Entry of Default Pursuant to Fed. R. Civ. P. 55(a)

A corporation cannot proceed *pro se*. *Rowland v. Calif. Men's Colony*, 506 U.S. 194, 201-02 (1993). A corporate defendant's failure to obtain counsel is a failure to "otherwise defend" and thus a default under Rule 55(a). *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 192 (2d Cir. 2006) (noting that a default judgment may be entered against a corporation that fails to appear through counsel); *SEC v. Rsch. Automation Corp.*, 521 F.2d 585, 589 (2d Cir. 1975) ("It is settled law . . . where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55.").

As noted above, after this case was transferred to this Court, BSPLC dismissed its counsel and ceased participating in the litigation. [ECF No. 82]. Despite being warned of the consequences, BSPLC has failed to retain new counsel or to take any other action in this case. It was therefore appropriate for the Clerk of the Court to enter a default against BSPLC pursuant to Fed. R. Civ. P. 55(a). *See Mickalis Pawn Shop*, 645 F.3d at 130 (entry of default was appropriate where corporate defendants indicated their intention to cease participating in case, even after being warned of the consequences, and where counsel was withdrawn without replacement).

## III.   Entry of Final Default Judgment Pursuant to Fed. R. Civ. P. 55(b)(2)

In this case, although BSPLC participated in the litigation while it was pending in the District of Columbia, it did so only to seek dismissal of the case for, *inter alia*, lack of personal jurisdiction. [ECF No. 15]. Since the case was transferred to this District, BSPLC has not appeared or participated in any way. In essence, it is as if this case is newly filed in this District and the defendant has never made an appearance.

### A. Appropriateness of Considering Personal Jurisdiction

"[A] district court should not raise personal jurisdiction *sua sponte* when a defendant has appeared and consented, voluntarily or not, to the jurisdiction of the court." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). However, where a defendant has not appeared, a court "may first assure itself that it has personal jurisdiction over the defendant" before entering a default judgment. *Id.* Here, there are two reasons why it is appropriate for the Court to exercise its discretion and to consider whether it has personal jurisdiction over BSPLC.

First, the requirement that a court have personal jurisdiction over a defendant serves to protect individual liberty. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03 (1982). The requirement acts as a check on the power of a federal court to bind a defendant, ensuring that control is exercised only over those who have sufficient minimum contacts with the forum so that maintenance of the suit does "not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). To enter an order against a foreign defendant without first determining personal jurisdiction would be to risk infringing upon a foreign defendant's liberty. *See Fuld v. Palestine Liberation Org.*, No. 20-CV-3374 (JMF), 2022 WL 62088, at *1 (S.D.N.Y. Jan. 6, 2022) (granting motion to dismiss despite statute declaring that certain conduct would confer personal jurisdiction, explaining that "Congress cannot, consistent with the Constitution, simply decree that any conduct, without regard for its connections to the United States generally or to litigation in the United States specifically, signals a party's intent to submit to the jurisdiction of a United States court. To hold otherwise would effectively mean that there are no constitutional limitations on the exercise of personal jurisdiction as a legislature could

simply create such jurisdiction out of whole cloth by deeming any conduct — even, for example, the conduct that gives rise to the cause of action itself — to be 'consent.'"); Daniel Mandell, *Picking Up Where* Aerospatiale *Left Off: Merits-Based Discovery, Foreign Parties, And Uncertain Personal Jurisdiction*, 100 JUDICATURE 57, 61-62 (2016) (discussing unfairness of requiring foreign defendant to engage in merits discovery under the Federal Rules of Civil Procedure prior to the establishment of personal jurisdiction).

Second, an examination now of personal jurisdiction is in the interest of judicial efficiency. BSPLC has already – successfully – challenged the exercise of one district court's personal jurisdiction. If this Court enters a default judgment against BSPLC, it is likely that BSPLC will again raise a jurisdictional issue either through a Fed. R. Civ. P. 60 motion to set aside the default, or in opposition to enforcement proceedings here or in another jurisdiction. Either way, the personal jurisdiction analysis will need to be considered. The difference, though, is that at that later time when the analysis is ultimately performed the parties will have had to submit additional briefing, and a court (possibly a foreign court less well-versed and equipped to consider American jurisdictional jurisprudence) will need to use its time to study and resolve the issue. By performing the analysis now while the Court is already seized of the matter, the Court can spare the parties the cost of additional briefing, and a future tribunal from having to spend its time to resolve the situation.

For these reasons, the Court exercises its discretion to first determine whether it can exercise personal jurisdiction over BSPLC before considering the merits of Plaintiffs' motion.

### B. Personal Jurisdiction Analysis

A court may exercise either general or specific personal jurisdiction over a defendant. "[G]eneral jurisdiction exists only when a corporation's contacts with a state are 'so continuous and systematic as to render [it] essentially at home in the forum State.'" *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A corporate defendant's home is generally limited to the corporation's place of incorporation and its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Here, BSPLC is a bank incorporated in the United Kingdom; it is wholly owned by BSI, which itself is incorporated in Iran. Compl. ¶¶ 15-16. The Complaint does not indicate where BSPLC's principal place of business is or describe any activities by BSPLC in New York such that it could reasonably be considered to be otherwise at home in the state. The Court therefore finds that it cannot exercise general personal jurisdiction over BSPLC.

Unlike general personal jurisdiction, which permits a court to hear any claims against a defendant, specific personal jurisdiction "depends on an affiliation between the forum and the underlying controversy." *Goodyear*, 564 U.S. at 919 (quotations omitted); *see also Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) ("The exercise of specific jurisdiction depends on in-state activity that gave rise to the episode-in-suit." (quotations omitted)). In evaluating whether specific personal jurisdiction may be exercised, a federal court first looks to the law of the state in which it sits, and then, if it finds that state law confers jurisdiction, considers whether the "exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013).

Under New York law, specific personal jurisdiction is governed by N.Y. CPLR § 302(a), which provides for four situations in which jurisdiction can be exercised over a non-domiciliary:

> [A] court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.

N.Y. CPLR § 302(a). Neither the Complaint nor Plaintiffs' motion includes any allegations or facts that would enable the Court to find jurisdiction pursuant to this statute. The Complaint does not allege that BSPLC has a connection to or transacts any business in New York, or that any of the Plaintiffs were or are New York residents or suffered an injury in New York. The Court cannot, therefore, find that it may exercise personal jurisdiction over BSPLC pursuant to N.Y. CPLR § 302(a).

A federal court may also, however, exercise personal jurisdiction over a foreign defendant pursuant to Fed. R. Civ. P. 4(k)(2), which provides,

> [f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

9

(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

(B) exercising jurisdiction is consistent with the United States Constitution and laws.

This rule permits the exercise of personal jurisdiction when three conditions are met: "(1) the claim must arise under federal law; (2) the defendant must not be 'subject to jurisdiction in any state's courts of general jurisdiction'; and (3) the exercise of jurisdiction must be 'consistent with the United States Constitution and laws.'" *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008). The third condition requires that the exercise of personal jurisdiction over a non-resident defendant would not offend the Due Process Clause of the Fifth Amendment, which means that "maintenance of the suit would not 'offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe*, 326 U.S. at 316). To determine whether this is so, the Court first considers "whether the defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction." *Id.* (citing *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996)). These contacts may be found through the in-forum effects of out-of-forum actions "if the defendant expressly aimed its conduct at the forum." *Licci*, 732 F.3d at 173 (describing the so-called "effects test" for personal jurisdiction). If sufficient minimum contacts exist, the Court then asks "whether it would be reasonable, in all the circumstances, to exercise personal jurisdiction." *Porina*, 521 F.3d at 127 (citing Fed. R. Civ. P. 4 advisory committee's note, 1993 Amendments).

Here, Plaintiffs' claims against BSPLC are pursuant to the ATA, so the first condition is clearly satisfied. However, the Court is not able to find that either the second or third conditions – both of which turn on contacts between BSPLC and the United States – are satisfied because the Complaint contains no allegations regarding either the presence or absence of such contacts. The

only geographic reference provided in the Complaint is that BSPLC is incorporated in the United Kingdom; there are no allegations of branches, offices, accounts, or business activities anywhere in the United States. Compl. ¶ 16. Nor does the Complaint support a finding that BSPLC's alleged tortious actions were intentionally directed at, or had an effect anywhere in, the United States. Rather, the Plaintiffs do not identify themselves as residents of any state (they appear to all be residents of Israel), and their injuries were sustained during the missile and rocket attacks in Israel. In short, aside from the fact that Plaintiffs are American citizens, the Complaint does not plead any contact at all between BSPLC, its alleged activities, the effects of those activities, and the United States. The Court cannot, therefore, find that it may exercise personal jurisdiction over BSPLC pursuant to Fed. R. Civ. P. 4(k)(2). *See Walden v. Fiore*, 571 U.S. 277, 284-85 (2014) (explaining that due process requires contacts between the defendant and the forum; "the plaintiff cannot be the only link between the defendant and the forum"); *Bersoum v. Aboteat*, No. 20-CV-08013 (CM), 2021 WL 4951670, at *8 (S.D.N.Y. Oct. 25, 2021) (personal jurisdiction could not be exercised pursuant to Fed. R. Civ. P. 4(k)(2) where there were no connections or contacts between defendants and the United States, alleged improper activities were done outside the United States, and effects of those activities were not felt inside the United States); *AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 334 (S.D.N.Y. 2017) (personal jurisdiction could not be exercised, despite the fact that plaintiff was an American company, where plaintiff failed to allege that defendant expressly directed his conduct at the United States so as to cause effects in the United States).

In their motion for entry of a default judgment, Plaintiffs argue that the Court may exercise personal jurisdiction over BSPLC because BSPLC waived any jurisdictional objection through its default. [ECF No. 88], at 6 (citing *Mickalis Pawn Shop*, 645 F.3d at 135). Plaintiffs contend that

BSPLC "is well-acquainted with this rule, because it was found to have forfeited its personal jurisdiction defense in *Lelchook* [*v. Islamic Republic of Iran*, Civ. No. 16-7078-ILG-RLM (E.D.N.Y.)] for just this reason." *Id.* And, they conclude, BSPLC was also "explicitly warned" by its counsel that "its decision to dismiss its counsel and cease participation in this case would result in forfeiture of its personal jurisdiction defense and default judgment." *Id.* (citing [ECF No. 82], at 3-4). Plaintiffs' reliance on *Mickalis Pawn Shop* and *Lelchook* is misplaced because both of those cases are factually distinguishable from this one.

In *Mickalis Pawn Shop*, the defendants appeared and twice challenged the court's exercise of personal jurisdiction through motions to dismiss; those motions were denied. *Mickalis Pawn Shop*, 645 F.3d at 121. At that point, one of the defendants stopped participating in the case. A second defendant continued through discovery, challenged personal jurisdiction for a third time in a motion for summary judgment, and lost again. Then, in the midst of jury selection, that defendant chose to stop participating in the case. *Id.* at 123-24. Entry of default judgment was made by the same judge in the same district as the defendants had previously appeared and been found to be subject to personal jurisdiction. *Id.* Both defendants appealed the entry of default judgment to the Second Circuit where they argued that the district court was required to find it had personal jurisdiction over them prior to entering a default judgment. *Id.* at 127-28, 133. The Second Circuit rejected the defendants' arguments, holding that "a defendant forfeits its jurisdictional defense if it appears before a district court to press that defense but then willfully withdraws from the litigation and defaults, even after being warned of the consequences of doing so." *Id.* at 135 (citing *e360 Insight v. Spamhaus Project*, 500 F.3d 594 (7th Cir. 2007)).

In contrast to the situation in *Mickalis Pawn Shop*, here BSPLC challenged the exercise of the court's jurisdiction over it in the District of Columbia *and won*. After winning, it took no

further action. The case was then transferred to this Court – a different judicial district – where BSPLC effectively has not appeared. BSPLC's decision to stop participating in the proceedings, despite having been warned of the consequences just as the defendants in *Mickalis Pawn Shop* were, is thus not the same as having appeared, lost a personal jurisdiction challenge, continuing to participate, and then withdrawing. Given these differences, the Court concludes that the Second Circuit's holding in *Mickalis Pawn Shop* is not applicable to this case.

*Lelchook* is also distinguishable from this case. In *Lelchook*, plaintiffs brought claims under the same statutes for the same type of conduct against the same defendants as in this case. The case was originally commenced in the United States District Court for the District of Massachusetts. However, just as in this case, that court found that it could not exercise personal jurisdiction over BSPLC and transferred the action to this Court because the plaintiffs had "presented facts . . . that would plausibly support jurisdiction in New York." *Lelchook*, 224 F. Supp. 3d at 116-17. After transfer, plaintiffs sought jurisdictional discovery, which BSPLC opposed. *See* Resp. in Opp'n to Mot. for Disc. [ECF No. 118], Min. Entry for Mot. Hr'g [ECF No. 123], and Mem. in Opp'n to Pls.' Mot. for Jurisdictional Disc. [ECF No. 129], *Lelchook v. Islamic Republic of Iran*, Case No. 16-CV-7078 (ILG) (RLM) (E.D.N.Y.). Prior to the resolution of plaintiffs' motion, BSPLC's counsel informed the Court that BSPLC had decided to stop participating in the action and sought leave to withdraw. Letter from Jeremy D. Frey to Honorable Roanne L. Mann [ECF No. 133], *Lelchook v. Islamic Republic of Iran*, Case No. 16-CV-7078 (ILG) (RLM) (E.D.N.Y. Aug. 7, 2018). Before granting counsel's motion to withdraw, the Court required counsel to inform BSPLC that a consequence of its refusal to participate in the action would be a waiver of its personal jurisdiction defense and to permit entry of a default judgment. Order [ECF No. 145], *Lelchook v. Islamic Republic of Iran*, Case No. 16-CV-7078 (ILG) (RLM)

(E.D.N.Y. Aug. 23, 2018). Counsel submitted an affidavit confirming that he provided this warning to BSPLC. Letter to Court Regarding Motion to Withdraw Attaching Affidavit and Proposed Order [ECF No. 147], *Lelchook v. Islamic Republic of Iran*, Case No. 16-CV-7078 (ILG) (RLM) (E.D.N.Y. Aug. 30, 2018). Despite the warning, BSPLC did not retain new counsel or take any other action in the case. The Court ultimately entered a final default judgment against BSPLC. *Lelchook v. Islamic Republic of Iran*, 393 F. Supp. 3d 261, 269-70 (E.D.N.Y. 2019).

Despite the facial procedural and substantive similarities between *Lelchook* and this case, there are two critical differences. First, after transfer to this Court, BSPLC appeared and participated in the proceeding by filing oppositions to the *Lelchook* plaintiffs' request for jurisdictional discovery. Second, and more importantly, the amended complaint in *Lelchook* contained allegations that identified connections between BSPLC's conduct and the United States. Specifically, the amended complaint identified two of the plaintiffs as residents of Massachusetts, meaning that their injuries were suffered within the United States, and it alleged that BSPLC utilized New York's banking system in order to conduct the financial transfers that led to plaintiffs' injuries. *See* Am. Compl. [ECF No. 81] ¶¶ 8-9, 17-18, 133, 139, 144-49, and 152, *Lelchook v. Islamic Republic of Iran*, Case No. 16-CV-7078 (ILG) (RLM) (E.D.N.Y. Sept. 9, 2016). Because the Court took all of the amended complaint's factual allegations as true, *Lelchook*, 393 F. Supp. 3d at 264, it could find that sufficient minimum contacts existed between BSPLC and the United States to permit the exercise of personal jurisdiction without "offend[ing] 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463).

Having found that it cannot exercise personal jurisdiction over BSPLC, and without any reason to believe there is another district to which a transfer would be appropriate, the Court will

14

dismiss the action. *Sinoying Logistics*, 619 F.3d at 213 (explaining that a court may *sua sponte* dismiss an action if it finds a lack of personal jurisdiction).

## CONCLUSION

The Court does not trivialize the injuries that Plaintiffs suffered as a result of the conduct they describe in the Complaint. Although Plaintiffs are certainly entitled to redress for their severe injuries, *see Marbury v. Madison*, 1 Cranch 137, 163 (1803), their ability to receive that redress from this Court is circumscribed by constitutional requirements designed to ensure that the granting of redress does not unjustly create a new injury to the rights of others. Without allegations establishing sufficient minimum contacts between BSPLC and the United States, the courthouse doors must remain closed. Therefore, Plaintiffs' motion for entry of a final default judgment is **DENIED** and the case is **DISMISSED** without prejudice.

SO ORDERED.

Dated:     Brooklyn, New York
           April 13, 2022

/s/_____
I. Leo Glasser
Senior United States District Judge