**22-1122-cv**
*Kaplan v. Bank Saderat PLC*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————

August Term, 2022

Submitted: April 26, 2023    Decided: August 10, 2023

Docket No. 22-1122-cv

————————

CHAIM KAPLAN, INDIVIDUALLY AND AS NATURAL GUARDIAN OF PLAINTIFFS M.K.(1), A.L.K., M.K.(2), C.K. AND E.K, RIVKA KAPLAN, INDIVIDUALLY AND AS NATURAL GUARDIAN OF PLAINTIFFS M.K.(1), A.L.K., M.K.(2), C.K. AND E.K, M.K.(1), A MINOR, BY HER FATHER AND NATURAL GUARDIAN, CHAIM KAPLAN, AND BY HER MOTHER AND NATURAL GUARDIAN, RIVKA KAPLAN, M.K.(2), A MINOR, BY HIS FATHER AND NATURAL GUARDIAN, CHAIM KAPLAN, AND BY HIS MOTHER AND NATURAL GUARDIAN, RIVKA KAPLAN, A.L.K., A MINOR, BY HIS FATHER AND NATURAL GUARDIAN, CHAIM KAPLAN, AND BY HIS MOTHER AND NATURAL GUARDIAN, RIVKA KAPLAN, C.K., A MINOR, BY HER FATHER AND NATURAL GUARDIAN, CHAIM KAPLAN, AND BY HER MOTHER AND NATURAL GUARDIAN, RIVKA KAPLAN, E.K., A MINOR, BY HIS FATHER AND NATURAL GUARDIAN, CHAIM KAPLAN, AND BY HIS MOTHER AND NATURAL GUARDIAN, RIVKA KAPLAN, MICHAEL FUCHS, ESQ., AVISHAI REUVANE, ELISHEVA ARON, CHAYIM KUMER, NECHAMA KUMER, KEREN ARDSTEIN, INDIVIDUALLY AND AS NATURAL GUARDIAN OF PLAINTIFFS , M.A., A.C.A. AND N.Y.A., BRIAN ARDSTEIN, INDIVIDUALLY AND AS NATURAL GUARDIAN OF PLAINTIFFS , M.A., A.C.A. AND N.Y.A., M.A., A MINOR, BY HER FATHER AND NATURAL GUARDIAN, BRIAN ARDSTEIN, AND BY HER MOTHER AND NATURAL GUARDIAN, KEREN ARDSTEIN, N.A., A MINOR, BY HER FATHER AND NATURAL GUARDIAN, BRIAN ARDSTEIN, AND BY HER MOTHER AND NATURAL GUARDIAN, KEREN ARDSTEIN, A.C.A., A MINOR, BY HIS FATHER AND NATURAL GUARDIAN, BRIAN ARDSTEIN, AND BY HIS MOTHER AND NATURAL GUARDIAN, KEREN ARDSTEIN, N.Y.A., A MINOR, BY HIS FATHER AND NATURAL GUARDIAN, BRIAN ARDSTEIN, AND BY HIS MOTHER AND NATURAL

GUARDIAN, KEREN ARDSTEIN, LAURIE RAPPEPORT, INDIVIDUALLY AND AS NATURAL GUARDIAN OF PLAINTIFF M.R., M.R., A MINOR, BY HER MOTHER AND NATURAL GUARDIAN, LAURIE RAPPEPORT, YAIR MOR, THEODORE GREENBERG, MAURINE GREENBERG, JACOB KATZMACHER, DEBORAH CHANA KATZMACHER, CHAYA KATZMACHER, MIKIMI STEINBERG, JARED SAUTER, DANIELLE SAUTER, MYRA MANDEL, Y.L., A MINOR, BY HIS FATHER AND NATURAL GUARDIAN, ELIHAV LICCI, AND BY HIS MOTHER AND NATURAL GUARDIAN, YEHUDIT LICCI, ELIHAV LICCI, INDIVIDUALLY AND AS NATURAL GUARDIAN OF PLAINTIFF, Y.L., YEHUDIT LICCI, INDIVIDUALLY AND AS NATURAL GUARDIAN OF PLAINTIFF, Y.L., TZVI HIRSH, ARKADY GRAIPEL, TATIANA KREMER, YOSEF ZARONA, TAL SHANI, SHLOMO COHEN, NITZAN GOLDENBERG, RINA DAHAN, RAPHAEL WEISS, AGAT KLEIN, TATIANA KOVLEYOV, VALENTINA DEMESH, RIVKA EPON, JOSEPH MARIA, IMMANUEL PENKER, ESTHER PINTO, SARAH YEFET, SHOSHANA SAPPIR,

*Plaintiffs-Appellants,*

— v. —

BANK SADERAT PLC,

*Defendant-Appellee,*

CENTRAL BANK OF THE ISLAMIC REPUBLIC OF IRAN, AKA BANK MARKAZI JOMHOURI ISLAMI IRAN, ISLAMIC REPUBLIC OF IRAN, CBI DOES 1-10, BSI DOES 1-10, BSPLC DOES 1-10, IRANIAN DOES 1-10, BANK SADERAT IRAN,

*Defendants.[*]*

_____

B e f o r e :

CABRANES, LYNCH, and LOHIER, *Circuit Judges.*

_____

[*] The Clerk of Court is directed to amend the caption as set forth above.

———————————

Plaintiffs-Appellants, American victims of terror attacks in Israel, appeal from the judgment of the United States District Court for the Eastern District of New York (Glasser, *J.*) dismissing their complaint for lack of *in personam* jurisdiction over Defendant-Appellee Bank Saderat PLC, a bank associated with the Islamic Republic of Iran. Appellants challenge the district court's conclusion that the Appellee's default, which occurred just after venue was transferred from the United States District Court for the District of Columbia to the Eastern District of New York, did not forfeit its objection to personal jurisdiction in New York. We conclude that the district court's judgment relied on the erroneous factual finding that the Appellee had successfully challenged personal jurisdiction in the District of Columbia before the case was transferred to New York. We accordingly **VACATE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.

———————————

ROBERT J. TOLCHIN, The Berkman Law Office, LLC, Brooklyn, NY, *for Plaintiffs-Appellants*.

BANK SADERAT PLC, *Did Not Appear*.

———————————

GERARD E. LYNCH, *Circuit Judge*:

This appeal arises from a long-running action by Plaintiffs-Appellants,

who are 18 American civilian victims of terrorist rocket attacks carried out in

Israel in 2006 (together, "Plaintiffs").[1]

———————————————

[1] The caption to this case includes individuals and entities who are no longer parties in this appeal. The action was originally brought in 2010 by 18 Americans and several other nationals of foreign countries, but only the American citizen

3

The action has taken a circuitous journey. In 2010, Plaintiffs sued Bank Saderat PLC ("BSPLC") in the United States District Court for the District of Columbia ("D.D.C."), alleging that the bank, which is associated with the Islamic Republic of Iran ("Iran"), materially supported the rocket attacks, in violation of the Antiterrorism Act of 1990 ("ATA"), 18 U.S.C. § 2333(a). BSPLC appeared and raised several defenses, including lack of personal jurisdiction anywhere in the United States. The D.D.C. dismissed the ATA claims against BSPLC on other grounds. Five years later, the United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") vacated that decision and remanded for the district court to first determine whether it had personal jurisdiction over BSPLC before addressing the merits. On remand, Plaintiffs conceded that venue was improper in the District of Columbia, and moved – unopposed – to sever the ATA claims and transfer venue to the Eastern District of New York ("E.D.N.Y."), where they contended – and the district court agreed – personal jurisdiction plausibly existed. The D.D.C. granted the motion. Just after the transfer, however, BSPLC abruptly withdrew from the case. Plaintiffs moved for default judgment.

---

Plaintiffs remain in this appeal after certain of their claims were severed and transferred to the Eastern District of New York.

The district court (I. Leo Glasser, *J.*) denied the motion and instead dismissed the complaint *sua sponte*, holding that it lacked personal jurisdiction over BSPLC. Key to the court's reasoning was its determination that, because BSPLC had defaulted *post*-transfer, and it had prevailed on its jurisdiction defense in the D.D.C. *pre*-transfer, it had not forfeited its objection to personal jurisdiction. That conclusion, however, was founded on a mistake of fact: that BSPLC had "won" its personal jurisdiction defense in the D.D.C. App'x 54 (emphasis omitted). Because the district court's conclusion that BSPLC's default did not forfeit its defense relied on an incorrect factual premise, we **VACATE** the district court's judgment and **REMAND** for proceedings consistent with this opinion.

## BACKGROUND[2]

---

[2] The facts set forth below are drawn from the record and Plaintiffs' 2010 complaint filed in the D.D.C., *see* Complaint, *Kaplan v. Cent. Bank of Islamic Republic of Iran*, No. 19-cv-3142 (E.D.N.Y. Mar. 23, 2010), ECF No. 3, and opinions relevant to the procedural history of the case, *see, e.g., Lelchook v. Islamic Republic of Iran* ("*Lelchook I*"), 224 F. Supp. 3d 108 (D. Mass. 2016); *Wultz v. Islamic Republic of Iran*, 762 F. Supp. 2d 18 (D.D.C. 2011). We accept as true all nonconclusory factual allegations in the complaint relevant to this decision. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011).

The ATA provides that "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States." 18 U.S.C. § 2333(a). The acts of international terrorism underlying this appeal occurred between July 12 and August 14, 2006, when Hezbollah,[3] a terrorist organization, fired rockets into northern Israel. The attacks injured and killed scores of American citizens residing in Israel, including Plaintiffs and their family members.

In 2010, Plaintiffs filed this lawsuit in the D.D.C. against multiple banks associated with Iran, including BSPLC, alleging that the defendants materially supported the rocket attacks in violation of U.S. and Israeli law. As relevant here, Plaintiffs brought two ATA claims against BSPLC, alleging that between 2001 and 2006, BSPLC facilitated the transfer of over $50 million originating from Iran, flowing through the Central Bank of Iran, Bank Saderat Iran ("BSI"), BSPLC, and finally landing in Hezbollah's accounts in BSI branches in Lebanon. BSPLC is

---

[3] "Hezbollah" may also be transliterated as "Hizbollah" or "Hizballah." *See Licci by Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201, 206 n.4 (2d Cir. 2016). We adopt the spelling used by the district court for consistency, but note that the Plaintiffs have used two different spellings throughout this case: "Hezbollah" in the complaint, and "Hizbollah" on appeal.

6

incorporated in London, United Kingdom, and is a wholly owned subsidiary of BSI, which is incorporated in Iran. Plaintiffs' complaint did not allege that any portion of the $50 million transferred to Hezbollah through these foreign entities passed through the New York banking system. Rather, they alleged that BSPLC's conduct as a whole was connected to the United States because it was intended to facilitate terror attacks that targeted Americans.

BSPLC appeared in the action and moved to dismiss the claims based on a variety of defenses, including lack of personal jurisdiction. It did not argue, however, that it lacked contacts specifically with the District of Columbia. Instead, it broadly contested its contacts with the entire United States because Plaintiffs' jurisdictional theory was predicated on Federal Rule of Civil Procedure 4(k)(2), which provides that effecting service on a defendant establishes personal jurisdiction over that defendant in any federal district court so long as a plaintiff asserts a federal claim and the defendant is not subject to personal jurisdiction in any state, subject only to due process constraints. Fed. R. Civ. P. 4(k)(2). Due process in turn requires that the defendant "have certain minimum contacts [with the territory of the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v.*

7

*Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). For purposes of Rule 4(k)(2), the territory with which defendants must have sufficient contacts is "the United States as a whole," not any particular state. *Dardana Ltd. v. Yuganskneftegaz*, 317 F.3d 202, 207 (2d Cir. 2003).

The D.D.C. did not decide that issue. In 2013, it dismissed the ATA claims against BSPLC on other grounds.[4] *Kaplan v. Cent. Bank of Islamic Republic of Iran* ("*Kaplan I*"), 961 F. Supp. 2d 185, 199-204 (D.D.C. 2013), *aff'd in part, vacated in part*, 896 F.3d 501 (D.C. Cir. 2018). Plaintiffs appealed.

Two decisions relevant to personal jurisdiction under the ATA were issued in the D.D.C. and in this Circuit after Plaintiffs filed their complaint. First, prior to the 2013 dismissal of this case, Judge Royce C. Lamberth of the D.D.C. – the same judge who was presiding over this case – decided in a separate action,

---

[4] The D.D.C. held that Plaintiffs failed to state a claim because the acts that caused their injuries fell within the ATA's "act of war" exception, which provides that "[n]o action shall be maintained . . . for injury or loss by reason of an act of war." *Kaplan I*, 961 F. Supp. 2d at 199, quoting 18 U.S.C. § 2336(a) (alteration and omission in original) (internal quotation marks and emphasis omitted). That defense became moot after Congress enacted the Anti-Terrorism Clarification Act of 2018, Pub. L. No. 115-253, § 2(a), 132 Stat. 3183, which amended the ATA "to clarify that acts of a designated [foreign terrorist organization] are not within the so-called act-of-war exception." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 847 (2d Cir. 2021). The United States had designated Hezbollah a foreign terrorist organization in 1997. *Id.* at 848.

*Wultz v. Islamic Republic of Iran,* that the venue provision of the ATA, 18 U.S.C. §

2334(a), required plaintiffs to establish the court's personal jurisdiction over

foreign defendants through the defendants' contacts with the state where the

action is filed, as opposed to through their nationwide contacts.[5] *See* 762 F. Supp.

2d 18, 25-30 (D.D.C. 2011). Two years later, we held that courts may exercise

personal jurisdiction over foreign banks that repeatedly use correspondent bank

accounts located in New York when those transactions are substantially

connected to the plaintiffs' underlying claims.[6] *Licci ex rel. Licci v. Lebanese*

*Canadian Bank, SAL* ("*Licci I*"), 732 F.3d 161, 171 (2d Cir. 2013); *see also Daou v. BLC*

*Bank, S.A.L.,* 42 F.4th 120, 130-33 (2d Cir. 2022).

   In 2018, the D.C. Circuit partially vacated *Kaplan I* and instructed the

D.D.C. to decide whether it could exercise personal jurisdiction over BSPLC

before addressing any defenses on the merits. *Kaplan v. Cent. Bank of the Islamic*

_____

[5] The jurisdictional requirements under the ATA's venue provision are not before us, and we express no view on the correctness of the D.D.C.'s ruling. We note it only to explain that Plaintiffs do not contest that the D.D.C.'s ruling applies to this case.

[6] "A correspondent bank account is a domestic bank account held by a foreign bank, similar to a personal checking account used for deposits, payments and transfers of funds." *Licci I*, 732 F.3d at 165 n.3 (internal quotation marks omitted).

*Republic of Iran* ("*Kaplan II*"), 896 F.3d 501, 514, 516 (D.C. Cir. 2018). On remand, Plaintiffs moved to sever the ATA claims against BSPLC and transfer those claims to the E.D.N.Y. In that motion, Plaintiffs explained that they expected Judge Lamberth to apply his interpretation of the ATA's venue provision as he had done in *Wultz*, and because they conceded that BSPLC did not have contacts with the District of Columbia, Plaintiffs instead intended to seek jurisdictional discovery of BSPLC's New York contacts once the case was transferred. Plaintiffs also explained that BSPLC did not oppose the transfer, which it agreed to "[w]hile reserving all its rights, contesting personal jurisdiction *in the United States* and without otherwise admitting or agreeing with [P]laintiffs' claims or assertions." App'x 8 (emphasis added). Judge Lamberth granted the request, reasoning that jurisdictional transfer pursuant to 28 U.S.C. § 1631 was "in the interest of justice" because "New York plausibly has jurisdiction over this case."[7]

---

[7] Section 1631 authorizes federal courts to transfer a case for "want of jurisdiction" to any other court where the action originally could have been brought, so long as transfer is in the "interest of justice." 28 U.S.C. § 1631. In lieu of dismissing the action on the ground that Plaintiffs' complaint did not specifically allege BSPLC's contacts with New York, Judge Lamberth chose to transfer the ATA claims to New York in partial reliance on a decision of the United States District Court for the District of Massachusetts in a parallel ATA action against BSPLC brought by different plaintiffs for injuries sustained in the same 2006 rocket attacks. *Kaplan III*, 2019 WL 2103424, at *2. In that case, *Lelchook*

*Kaplan v. Cent. Bank of Islamic Republic of Iran* ("*Kaplan III*"), No. 10-CV-483 (RCL),

2019 WL 2103424, at *3 (D.D.C. May 14, 2019).

Shortly after the case was transferred to the E.D.N.Y., BSPLC's counsel

moved to withdraw, averring that BSPLC had discharged its attorneys and

decided to cease participating in the case even after being advised that

withdrawal would "result in forfeiture of its defenses . . . including its defense of

lack of personal jurisdiction." App'x 23. The district court granted the motion,

and when BSPLC failed to substitute counsel, the Clerk of Court entered default

on September 5, 2019.[8]

---

*v. Islamic Republic of Iran* ("*Lelchook I*"), the Massachusetts court "assessed that
there was likely personal jurisdiction in New York based on plaintiffs' allegation
that BSPLC transferred funds to Hezbollah through the U.S. financial system that
was likely routed through New York." *Kaplan III*, 2019 WL 2103424, at *2, citing
*Lelchook I*, 224 F. Supp. 3d at 117.

  *Lelchook* was transferred to the E.D.N.Y. and assigned to Judge Glasser,
who made no affirmative ruling on BSPLC's contacts with New York because –
as it did in this case – BSPLC abruptly withdrew shortly after the D.C. Circuit
vacated and remanded *Kaplan I* in 2018. *Lelchook v. Islamic Republic of Iran*, 393 F.
Supp. 3d 261 (E.D.N.Y. 2019). Instead, after BSPLC's withdrawal, Judge Glasser
granted default judgment to the plaintiffs in *Lelchook*, ruling that BSPLC had
"waived its defenses," including its personal jurisdiction defense. *Id.* at 265-70.

[8] The Clerk of Court must enter a default "[w]hen a party against whom a
judgment for affirmative relief is sought has failed to plead or otherwise defend"
an action. Fed. R. Civ. P. 55(a). A corporation may not appear in federal court *pro
se,* and default may enter against a corporate defendant that fails to defend itself

Plaintiffs then moved for default judgment, which the district court denied. Instead, it dismissed the case for lack of personal jurisdiction, concluding that the 2010 complaint failed to allege that BSPLC maintained contacts with New York. The court exercised its discretion to raise personal jurisdiction *sua sponte*, reasoning that BSPLC effectively had never appeared in the E.D.N.Y., and that BSPLC's default did not forfeit its jurisdictional defense because, in the district court's estimation, BSPLC had previously won its personal jurisdiction challenge in the D.D.C. This appeal followed.

## DISCUSSION

On appeal, Plaintiffs argue that the district court abused its discretion in three ways: (1) by failing to recognize that BSPLC forfeited its personal jurisdiction defense when it withdrew from the case, (2) by concluding that the court lacked personal jurisdiction over BSPLC, and (3) by raising personal jurisdiction *sua sponte* in the first place. Because we conclude that the district court rested its forfeiture determination on a clearly erroneous finding of fact, we do not decide Plaintiffs' alternative arguments.

---

in the action by retaining counsel. *Grace v. Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 192 (2d Cir. 2006).

## I.      Standard of Review

A district court's ruling that a defendant "did not waive personal jurisdiction is reviewed for abuse of discretion." *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60 (2d Cir. 1999). So too is a district court's decision to grant or deny a plaintiff's motion for default judgment. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 131-32 (2d Cir. 2011). A district court abuses – or, more precisely, exceeds – its discretion when its decision reflects an "error of law," rests on a "clearly erroneous factual finding," or "cannot be located within the range of permissible decisions."[9] *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001).

## II.      Personal Jurisdiction and Default

We consider whether the district court appropriately exercised its broad discretion to raise personal jurisdiction on its own initiative, and whether forfeiture "not only occurred but was so clear that the District Judge exceeded his allowable discretion in ruling that forfeiture had not occurred." *Hamilton*, 197

---

[9] "Abuse" of discretion is a term of art that does not signify the type of serious wrongdoing implied by the ordinary meaning of the term "abuse." The formulation is merely a "nonpejorative term of art" that "implies no misconduct on the part of the district court." *United States v. Bove*, 888 F.3d 606, 607 n.1 (2d Cir. 2018).

F.3d at 61.

Our case law has drawn an "important distinction . . . between appearing and non-appearing parties with respect to defenses of personal jurisdiction." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). In general, an appearing defendant that fails to timely assert the defense in its initial motion or pleading waives or forfeits[10] the right to raise it in later stages of litigation, or when seeking relief from the judgment.[11] *"R" Best Produce, Inc. v.*

---

[10] While the terms "waiver" and "forfeiture" are often used interchangeably because they have similar effects, they have slightly different meanings. "Waiver" is "best reserved for a litigant's intentional relinquishment of a known right," whereas "forfeiture" is more appropriate when "a litigant's action or inaction is deemed to incur the consequence of loss of a right, or . . . a defense." *Hamilton*, 197 F.3d at 61. We use the term "forfeit" in this opinion for ease of discussion, but underscore that we express no view on whether BSPLC deliberately intended to abandon its objection to personal jurisdiction in the E.D.N.Y. by withdrawing from the case, which is a question of fact reserved for the district court.

[11] A jurisdictional challenge after entry of default judgment proceeds under Rule 60(b)(4) of the Federal Rules of Civil Procedure, which authorizes courts to grant parties relief from a final judgment that is "void." Fed. R. Civ. P. 60(b)(4). A judgment is void "only in two situations: where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Sec. & Exch. Comm'n v. Romeril*, 15 F.4th 166, 171 (2d Cir. 2021) (internal quotation marks omitted). Alternatively, the non-appearing defendant may challenge the judgment collaterally in any forum in which the holder of the default judgment seeks to enforce it. *See Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982) ("A

*DiSapio*, 540 F.3d 115, 123 (2d Cir. 2008). Conversely, a non-appearing defendant, even with notice of the action, does not forfeit its personal jurisdiction defense. *Id.*

We have held that, before entering a default judgment against a non-appearing defendant, a district court "may first assure itself that it has personal jurisdiction over the defendant" – unless the defense has been waived or forfeited, in which case "a district court should *not* raise personal jurisdiction *sua sponte*." *Sinoying*, 619 F.3d at 213 (emphasis in original). That is because personal jurisdiction is an individual right that may be "purposely waived or inadvertently forfeited." *Mickalis Pawn Shop*, 645 F.3d at 133.

Whether waiver or forfeiture occurred, however, is not always clear. In one common scenario, a defendant timely objects to personal jurisdiction, extensively participates in litigation, then later reasserts the defense. *See Hamilton*, 197 F.3d at 61. In such cases, "we consider all of the relevant circumstances" to determine whether the defendant forfeited its objection to personal jurisdiction. *Id.* In *Hamilton*, after considering all the circumstances, we held that a defendant that raised an objection to personal jurisdiction in its initial pleading could not obtain

_____

defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding.").

15

post-verdict relief from the judgment because it had forfeited the defense after

participating in years of "[c]onsiderable pretrial activity" while passing up

multiple distinct opportunities to reassert its challenge along the way. *Id.* at 61-62.

This case presents a closer call. Where, as here, a defendant defaults after

nearly a decade of litigation, we are confronted with the subtler question of

whether the defendant deliberately abandoned the litigation, thereby forfeiting

all defenses. In *Mickalis Pawn Shop*, we stated that "a defendant forfeits its

jurisdictional defense if it appears before a district court to press that defense but

then willfully withdraws from the litigation and defaults, even after being

warned of the consequences of doing so." 645 F.3d at 135. There, the district court

preliminarily denied personal jurisdiction challenges made by two out-of-state

defendants. *Id.* at 118-20. One defendant subsequently withdrew during

discovery, and the other withdrew during jury selection. *Id.* at 122-23. The district

court then entered default judgment against both of them. *Id.* at 123-25. We

affirmed the district court's decision to decline to "raise *sua sponte* the defense of

lack of personal jurisdiction on behalf of parties who have elected not to pursue

those defenses for themselves," *id.* at 135 (internal quotation marks omitted and

alterations adopted), emphasizing that defendants who "unsuccessfully raise[] a

jurisdictional objection at the outset, but later create[] the impression that [they

have] abandoned it, may not seek to renew [their] jurisdictional argument on

appeal following an adverse determination on the merits." *Id.* at 134.

### III.    Whether BSPLC Forfeited Its Personal Jurisdiction Defense

The district court distinguished *Mickalis Pawn Shop* on the basis that the

defendants there lost their jurisdictional challenges before withdrawing from the

case. The court reasoned that, "[i]n contrast to the situation in *Mickalis Pawn Shop*,

here BSPLC challenged the exercise of the court's jurisdiction over it in the

District of Columbia *and won*." App'x 54 (emphasis in original). Then, "[a]fter

winning, [BSPLC] took no further action," and "effectively" did not appear after

the case was transferred to the E.D.N.Y. *Id.* at 54-55.

We do not decide whether we would arrive at the same conclusion if

tasked with determining, in the first instance, whether BSPLC forfeited its

defenses. Beyond that case specific issue, this appeal raises a novel issue of law:

to what extent, in a transferred case, a transferee court must consider a defaulting

defendant's litigation conduct in the original forum when assessing whether that

defendant abandoned the litigation, thereby forfeiting its defense of personal

jurisdiction. The answer is potentially dispositive of this appeal because, unlike

17

the defendants' withdrawals in *Mickalis Pawn Shop*, assessing whether BSPLC's withdrawal was willful requires considering its pre-transfer conduct in a different forum.

The district court did not directly address that legal question, however, because it understood the effect of transfer as resetting BSPLC's appearance in the case, thereby permitting it to "assure itself that it has personal jurisdiction over the defendant." *Sinoying*, 619 F.3d at 213. Yet the district court's forfeiture determination, which *was* based on BSPLC's pre-transfer litigation conduct and is a prerequisite to the district court's authority to *sua sponte* assess personal jurisdiction, relied on a clearly erroneous factual finding: that BSPLC "challenged the exercise of the court's jurisdiction over it in the District of Columbia *and won*." App'x 54 (emphasis in original).

The record demonstrates that BSPLC's pre-transfer objection to personal jurisdiction, originally raised in its 2011 motion to dismiss, addressed only Plaintiffs' theory that jurisdiction existed under Rule 4(k)(2). As noted, that rule requires that "the defendant is not subject to jurisdiction in *any* state's courts of general jurisdiction," Fed. R. Civ. P. 4(k)(2) (emphasis added), but permits jurisdiction based on the totality of the defendant's contacts with the United

States as a whole. Instead of dismissing the case for want of jurisdiction anywhere in the United States, however, the D.D.C. initially skipped over the question of personal jurisdiction and dismissed the case on a merits ground. Then, instructed by the D.C. Circuit to address personal jurisdiction as a threshold matter, the D.D.C. again declined to address BSPLC's arguments under Rule 4(k)(2). Rather, Plaintiffs abandoned their Rule 4(k)(2) theory, and acceded to the application of Judge Lamberth's holding in *Wultz* that Rule 4(k)(2) had no application in an ATA case and that personal jurisdiction in the D.D.C. had to be based on BSPLC's specific contacts with the District of Columbia. Conceding that BSPLC had no contacts with that forum, Plaintiffs instead proposed, and BSPLC did not contest, a transfer to the E.D.N.Y., where Plaintiffs hoped to establish jurisdiction.

In response, the D.D.C. granted not BSPLC's motion to dismiss for lack of jurisdiction, but the *Plaintiffs*' motion to transfer, holding that transfer to the E.D.N.Y. was in the interest of justice because New York courts could "plausibly" exercise jurisdiction over BSPLC. *Kaplan III*, 2019 WL 2103424, at *3. That conclusion forecloses any finding that BSPLC had prevailed on its challenge to jurisdiction anywhere in the United States, because the premise that at least *one*

19

state's "courts of general jurisdiction," Fed. R. Civ. P. 4(k)(2), could potentially

exercise personal jurisdiction was central to Judge Lamberth's decision to transfer

the case to New York. In fact, his opinion suggests that he anticipated that BSPLC

would lose its personal jurisdiction objection, as New York is part of the United

States, and he concluded that Plaintiffs could plausibly allege personal

jurisdiction in the E.D.N.Y. Rather than prevailing in its initial challenge to *in

personam* jurisdiction, BSPLC passively acquiesced in Plaintiffs' choice to adopt a

parallel ruling by Judge Lamberth in an entirely separate case in order to

continue the litigation in a different forum, where the D.D.C. hypothesized that

personal jurisdiction was available.

In sum, the district court premised its legal conclusion – that this case was

distinguishable from *Mickalis Pawn Shop* – on the incorrect factual finding that

BSPLC's pre-transfer, pre-default personal jurisdiction challenge in the District of

Columbia was successful. The record demonstrates that BSPLC achieved no such

victory. It was therefore clear error for the district court to find otherwise, and to

rely on that fact for the purpose of distinguishing BSPLC's conduct from that of

the defendants in *Mickalis Pawn Shop*.

We caution, however, that by remanding for the district court to correct

20

that factual error, we do not mean to suggest that it may not appropriately

conclude that BSPLC never forfeited its objection to personal jurisdiction in New

York. We express no view on that ultimate issue. Rather, the district court's

factual misstep leaves us unable to determine whether forfeiture is "so clear that

the District Judge exceeded his allowable discretion in ruling that forfeiture had

not occurred." *Hamilton*, 197 F.3d at 61. We observe only that reconsideration of

the case in light of the corrected premise, under "all of the relevant

circumstances," *id.*, may cast a different light on whether BSPLC's post-transfer

"decision to stop participating in the proceedings" constituted abandonment of

its personal jurisdiction defense. App'x 55.

## IV.   Effect of Transfer

The forfeiture analysis that is required on remand in this case is not as

simple as in *Mickalis Pawn Shop*, however, because in that case, all the

proceedings took place in a single district. Here, the case was transferred from

another district pursuant to the jurisdictional transfer statute, 28 U.S.C. § 1631,

and events leading up to the defendant's default straddled the actual transfer

from the D.D.C. to the E.D.N.Y. Yet, the legal effect of that transfer is unsettled.

Accordingly, on remand, the district court should also address the

antecedent legal issue raised by the transfer of venue occurring immediately before BSPLC's withdrawal from the case: the extent to which § 1631, or any other general principle of transfer, limits a court's ability to consider a withdrawn defendant's pre-transfer conduct in a case where venue was transferred due to a lack of jurisdiction in the original forum. *Cf. Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-67 (1962) (explaining that the purpose of the related improper venue statute, 28 U.S.C. § 1406(a), is "avoiding the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn"). The answer controls whether the district court should consider BSPLC's pre-transfer actions in the D.D.C. when determining whether BSPLC willfully abandoned the case, thereby forfeiting its personal jurisdiction defense.

Transferring an existing case decouples the usually united attributes of a defendant's appearance in a venue (or lack thereof) and its opposition to the district court's exercise of personal jurisdiction (or waiver thereof). Our cases describing a district court's discretion to assure itself of personal jurisdiction before entering default judgment against a non-appearing defendant have

22

involved actions that were filed in the same forum considering its jurisdiction. *See, e.g., Sinoying*, 619 F.3d at 213. The typical non-appearing defendant in such a case can be conceived of as retaining its right to object to the rulings of a court lacking *in personam* jurisdiction because, instead of mounting a jurisdictional challenge, the defendant opposes "litigating in a distant or inconvenient forum" by remaining completely absent from the proceedings. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). The defendant's deliberate absence, however, comes with a tradeoff: giving up the right "to plead or otherwise defend" the action, Fed. R. Civ. P. 55(a), and "risk[ing] a default judgment." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982). Whereas, "[b]y submitting to the jurisdiction of the court for the limited purpose of challenging jurisdiction" – and raising, in the alternative, available merits defenses – "the defendant agrees to abide by that court's determination on the issue of jurisdiction." *Id.*

Therefore, the defendant's appearance and whether it waives or forfeits its jurisdictional defenses are two events that are usually apparent at the outset of a newly filed case at around the same time. In this case, however, BSPLC appeared to defend the action when it was commenced in the D.D.C. and filed an omnibus

23

motion including both its merits defenses and its opposition to personal
jurisdiction that was asserted by Plaintiffs under a completely different theory
than that on which they now rely. BSPLC then received an ambivalent ruling that
did not finally determine whether it could be haled into any court in the United
States, chose not to oppose Plaintiffs' motion to continue litigating personal
jurisdiction in another district, and finally – just after the case was called in the
E.D.N.Y. – abruptly decided to "stop participating in the proceedings." App'x 55.
Unlike the typical non-appearing defendant in a newly filed case, BSPLC *had* a
history of appearing and participating in the *same* case. Whether that history
matters once the case arrived in the E.D.N.Y., however, depends on whether
BSPLC can be properly analogized to a non-appearing defendant in a newly filed
case, or whether, under the law of jurisdictional transfer, the case is understood
as a continuation of the same litigation that had been going on for a decade.

The district court adopted aspects of both approaches. It initially
analogized to a newly filed case and, writing on a clean slate, disregarded
BSPLC's pre-transfer appearance in the D.D.C. in order to raise personal
jurisdiction on its own initiative. Yet, the court apparently assumed that it *could*
also look to BSPLC's pre-transfer conduct – in the same case and in a different

judicial district – to find that BSPLC did not forfeit the defense because it

successfully challenged personal jurisdiction in the District of Columbia. In other

words, for the purpose of party appearance, it treated transfer as just a variant on

dismissal in the first district, only for the case to be filed anew in the second

district. But for the purpose of distinguishing BSPLC's conduct from the

defendants in *Mickalis Pawn Shop*, it treated transfer as a continuation of the same

case.

We see a missing piece in that analysis: the extent to which § 1631 limits

how much of the prior proceedings is carried over from the original district to the

second district. The jurisdictional transfer statute allows a court to transfer a case

in which it finds a "want of jurisdiction" to any other court where the action

originally could have been brought, so long as such a transfer is in the "interest of

justice." 28 U.S.C. § 1631. But neither that statute, nor related statutes § 1404(a)

(authorizing transfer for the convenience of the parties) and § 1406(a) (transfer for

improper venue), define which attributes of an ongoing case carry over to the

new forum.[12]

_____

[12] The only explicit reference to an attribute that carries over to the new forum
relates to the timeliness of actions. Section 1631 provides that the transferred
action "shall proceed as if it had been filed in or noticed for the court to which it

On the one hand, transfers may be understood as analogous to a dismissal of claims in the original district, followed by filing the same claims as a new case in the second district. That is because, when considering a motion to transfer under § 1631, a district court has the "authority to make a single decision upon concluding that it lacks jurisdiction – whether to dismiss the case or, 'in the interest of justice' to transfer it to a court . . . that has jurisdiction." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988), quoting 28 U.S.C. § 1631. On the other hand, a transferred case is not exactly the same as a newly filed action in the transferee district. Parties in transferred cases, for example, need not redo certain actions required of plaintiffs filing new cases, such as filing a new complaint or serving new process on defendants, and law of the case principles apply in transferred cases. *See id.* at 815-16.

We decline to determine in the first instance whether § 1631, or other principles of transfer, provide for the full continuation of prior proceedings, as

---

is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred." 28 U.S.C. § 1631. Thus, the statute contemplates that the transferee court inherits at least *some* of the proceedings of the transferor court – specifically, the filing date of the complaint. The question is, what, if any, other attributes of prior proceedings carry over to the transferee court.

Plaintiffs did not brief the issue either on appeal or before the district court.[13] *Cf.*

*Schonfeld v. Hilliard*, 218 F.3d 164, 184 (2d Cir. 2000) ("Although we are

empowered to affirm a district court's decision on a theory not considered below,

it is our distinctly preferred practice to remand such issues for consideration by

the district court in the first instance. This is particularly appropriate when, as

here, such theories have been briefed and argued only cursorily in this Court.").

　　We observe only that the question is one of first impression and potentially

determinative on remand. If the district court decides that, under principles of

transfer, a withdrawn defendant in a transferred case is properly analogized to a

non-appearing defendant in a newly filed case and its pre-transfer litigation

history is irrelevant to determining whether the defaulting defendant forfeited its

---

[13] Plaintiffs argue that the district court was bound by the law of the case to find
that BSPLC forfeited its jurisdictional defense, but the D.D.C. made no
pre-transfer ruling on forfeiture that would bind the E.D.N.Y. under that
doctrine. Plaintiffs also argue, in conclusory fashion, that "when an action is
transferred, it remains what it was; all further proceedings in it are merely
referred to another tribunal, leaving untouched whatever has been already
done." *Magnetic Eng'g & Mfg. Co. v. Dings Mfg. Co.,* 178 F.2d 866, 868 (2d Cir.
1950) (L. Hand, *J.*). That proposition, however, concerns only the finality of
transfer orders for the purposes of appellate jurisdiction, and does not describe
the effect of transfer on a defendant's retention of its waivable defenses in the
new forum. Plaintiffs have otherwise failed to address the general effect of
transfer on the continuity of proceedings in cases transferred for want of
jurisdiction under 28 U.S.C. § 1631.

defenses, Plaintiffs may appeal from that judgment and the question will be squarely presented. But if the district court decides that a transferred case is not so analogous to a newly filed case such that the defendant's pre-transfer litigation history can be considered to determine whether the defendant abandoned the case, it must assess that history accurately.

Therefore, in addition to reconsidering BSPLC's pre-transfer litigation conduct in light of the corrected premise, we observe that potentially adverse changes in the legal landscape that may have motivated the defendant's withdrawal are relevant circumstances bearing on its willful abandonment. The legal context relevant to this case significantly changed after 2010. Accordingly, under the premise that BSPLC neither won nor lost its personal jurisdiction objection in the D.D.C., if the district court finds pre-transfer litigation conduct relevant, it should consider whether BSPLC withdrew because it perceived that its chances of prevailing on its defense had soured following our line of cases since *Licci I*, which hold that foreign defendants are deemed to have submitted to personal jurisdiction in New York under certain conditions. *See Licci I*, 732 F.3d at 165. It should also consider the significance, if any, of BSPLC's pre-transfer decision to consent to Plaintiffs' motion to transfer venue to New York instead of

renewing its motion to dismiss, which had an arguably greater chance of success under Judge Lamberth's favorable holding in *Wultz*.

## V.      Remand

We remand for the district court to reconsider its forfeiture conclusion in light of the corrected fact that, prior to the transfer, BSPLC challenged only personal jurisdiction predicated on Rule 4(k)(2), and neither lost nor won on that objection. On remand, the district court should also assess whether, under that understanding, BSPLC in fact abandoned the litigation and forfeited its personal jurisdiction defense through its post-transfer default, or whether the newly transferred proceedings in the E.D.N.Y. are more appropriately analogized, under the law of jurisdictional transfer, to a new action by Plaintiffs in a jurisdiction where BSPLC has never appeared.

## CONCLUSION

For the reasons set forth above, we VACATE the district court's judgment denying Plaintiffs' motion for default judgment and dismissing the case for lack of jurisdiction, and REMAND the case to the district court for proceedings consistent with this opinion.